## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

LESLIE PURYEAR, *on behalf of himself and all those similarly situated,*

        Plaintiffs,

v.

CHADWICK DOTSON, *in his individual capacity,*

HAROLD CLARKE, *in his individual capacity,*

        Defendants.

**CLASS ACTION COMPLAINT**

CASE NO. 3:24-CV-00479

## INTRODUCTION

1.    This case challenges the illegal and unconstitutional detention of people who were incarcerated in Virginia Department of Corrections ("VADOC") prisons who, pursuant to the 2020 revision of Virginia's earned sentence credit ("ESC") program, were clearly eligible for release as early as July of 2022, but who were not released until approximately November of 2023.

2.    The proposed class here consists of people with convictions for inchoate offenses related to robbery and carjacking who, through their good conduct and program participation, had earned sufficient sentence credits to entitle them to release, but who were nevertheless subject to prolonged and illegal detention pursuant to Defendants' policy of wrongfully excluding individuals completing sentences for these offenses from the expanded ESC program.

1

3.      Virginia has long had an ESC program, whereby people who are incarcerated can earn time off their sentences through good conduct and program participation. Each ESC amounts to one day deducted from a person's term of incarceration. Va. Code Ann. § 53.1-202.2(A).

4.      In 2020, Virginia's General Assembly amended the existing ESC program to increase the rate at which qualifying individuals can earn credits, dramatically reducing the amount of time they had to serve in VADOC custody before they were entitled to release. The purpose of this amendment was to ensure that individuals who participated in rehabilitative programming were not detained longer than necessary, to encourage individuals to participate in such programming, and to save the Commonwealth money.

5.      The amended law reduced the sentences of hundreds if not thousands of people in VADOC custody by granting them expanded ESCs. Previously, people in VADOC custody could earn a maximum of 4.5 ESCs for every 30 days of incarceration. Under the new law, individuals are entitled to up to 15 ESCs for every 30 days in prison.

6.      The expanded ESCs are retroactive, and if a person's credits calculated retroactively under the new scheme made them eligible for release on or prior to the statute's effective date of July 1, 2022, VADOC was mandated to release them within 60 days of that date.

7.      The expanded ESCs are mandatory. The text of the new law removes the discretion that VADOC previously had to determine whether and to what extent individuals received ESCs. Other than individuals convicted of certain offenses enumerated in the statute, everyone in VADOC custody serving a sentence for a felony conviction is entitled to earn credits at the expanded ESC rate.

8.     The amended law was passed, and July 1, 2022, came and went. Yet VADOC refused to fully implement the new ESC program. It denied expanded ESCs to hundreds if not thousands of individuals of people in its custody and continued to imprison them.

9.     VADOC did this by unilaterally refusing to apply the amended statute to people who had been convicted of inchoate versions of completed offenses that were excluded in the statute, although the statute clearly did *not* exclude these inchoate offenses. In contravention of the statute's explicit list of excluded offenses and mandate that VADOC "shall" grant expanded ESCs except where excluded, VADOC refused to grant ESCs to groups of people who were clearly entitled to them.

10.     In July 2023, the Supreme Court of Virginia reiterated that those incarcerated for inchoate versions of offenses enumerated in the new ESC statute were not excluded from receiving expanded credits under the new law. The decision made doubly clear that these individuals were entitled to the expanded ESCs and that there was no valid legal justification for denying them release.

11.     Despite the statute's unambiguous text and the Supreme Court of Virginia's ruling, VADOC continued to detain people convicted of inchoate offenses, including the proposed class here: people with inchoate offense convictions related to robbery and carjacking. Class members remained in prison for weeks or months after they were entitled to release, separating them from their families, livelihoods, and communities.

12.     Plaintiff Leslie Puryear is one such class member. Mr. Puryear began serving an 18-year sentence in 2011. At the time of his conviction, Virginia's ESC program was in effect, and Mr. Puryear was eligible to participate.

13.    For more than a decade, Mr. Puryear served time in VADOC custody and participated in numerous job and skills-training programs. His exemplary conduct entitled him to the maximum number of ESCs.

14.    Under the General Assembly's amended ESC law, Mr. Puryear had earned enough credits to entitle him to release by July 1, 2022, the law's effective date. In fact, VADOC initially told Mr. Puryear and others in his position that they would be released within sixty days of July 1, 2022.

15.    But before VADOC released Mr. Puryear or others with inchoate offenses related to robbery and carjacking, it changed course. On July 29, 2022, VADOC told Mr. Puryear that it would not give him the expanded ESCs to which he was statutorily entitled because it had unilaterally decided to exclude those with attempted robbery convictions from the expanded ESC program, in spite of the statutory mandate to include them. So Mr. Puryear and the other class members remained incarcerated. They remained incarcerated even after the Virginia Supreme Court clearly held that people convicted of other inchoate crimes were not excluded from expanded ESCs.

16.    On September 26, 2023, Mr. Puryear filed a petition for writ of habeas corpus, challenging his continued detention as unlawful. VADOC initially opposed the petition, but on November 9, 2023, it released Mr. Puryear, conceding that individuals like him, who had been convicted of inchoate offenses associated with robbery or carjacking, were not excluded from the expanded ESC program.

17.    VADOC said it would retroactively credit all such individuals with expanded ESCs and release those eligible. By this time, however, much damage was done.

4

18.    Pursuant to VADOC's policies and practices, Mr. Puryear and those similarly situated had been denied their ESCs, and thus their freedom, for as long as 17 months. Mr. Puryear, for example, was wrongly incarcerated from July 2022 until November 2023.

19.    VADOC's policy and practice of over-detention caused class members, including Mr. Puryear, significant injuries, including but not limited to the deprivation of their constitutional rights, emotional distress, and loss of economic opportunity.

20.    Mr. Puryear now brings this action on behalf of himself and other individuals incarcerated for inchoate offenses relating to robbery or carjacking who were entitled to release prior to November 2023 but who were over-detained because VADOC wrongfully denied them ESCs in violation of the amended law. He brings this action under 42 U.S.C. § 1983 for violations of the Eighth and Fourteenth Amendments of the United States Constitution, and for false imprisonment under Virginia law, against Defendants Harold Clarke, former Director of VADOC, and Chadwick Dotson, current Director of VADOC (collectively "Defendants"), in their individual capacities.

## JURISDICTION AND VENUE

21.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3), and 28 U.S.C. § 2201. The Court has supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367.

22.    Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because the events or omissions giving rise to the claims occurred within this District.

## PARTIES

23.    Plaintiff Leslie Puryear is a Virginia resident who was, for the period relevant to this Complaint, incarcerated at Lunenburg Correctional Center, a middle-security facility in Victoria, Virginia operated by VADOC. He was released in November 2023.

24.    Defendant Chadwick Dotson has been the Director of VADOC since September 2023 and is named in his individual capacity. Director Dotson is ultimately responsible for all of VADOC's policies and procedures, including those relating to the ESC program. Defendant Dotson makes final, agency-wide decisions on how to administer the statutorily mandated ESC program.

25.    Defendant Harold Clarke was the Director of VADOC from November 2010 to September 2023 and is named in his individual capacity. Former Director Clarke was ultimately responsible for all of VADOC's policies and procedures, including those relating to the ESC program, for the duration of his tenure as Director of VADOC. Defendant Clarke made final, agency-wide decisions on how to administer the statutorily mandated ESC program.

## FACTUAL BACKGROUND

### The Earned Sentence Credit Program

26.    Since January 1, 1995, any individual in VADOC custody for a felony offense has been eligible to earn sentence credits by demonstrating good behavior and participating in job training and/or rehabilitative programs. *See* Va. Code Ann. § 53.1-202.3. Each ESC amounts to one day deducted from the person's term of incarceration. *Id.* § 53.1-202.2(A).

27.    Until July 1, 2022, the rate at which people accrued ESCs was determined by a classification system established by VADOC pursuant to its discretion in implementing the ESC

program. *See* Va. Code Ann. § 53.1-202.4 (effective until July 1, 2022); *id.* § 53.1-202.3 (effective July 1, 2022).

28.    Using this discretion, VADOC established a four-tier system for earning ESCs. VADOC assigned each individual to a level based on their participation in programming and disciplinary history while incarcerated. *See* Va. State Crime Comm'n, 2020 Annual Report 21–22 (2020).[1]

29.    In 2020, the Virginia General Assembly amended the ESC program to increase the rate at which incarcerated individuals receive ESCs and to eliminate VADOC's discretion in awarding credits. *See* Va. Code Ann. § 53.1-202.3. Those amendments went into effect on July 1, 2022. *Id.*

30.    The goals of the legislation were to bring Virginia's sentence-credit law in accord with those of other states, many of which set forth eligibility requirements for sentence credits in the text of the enacting statutes; to reduce the amount of money the Commonwealth was spending on incarceration; and to offer incentives for incarcerated individuals to take advantage of job training and skills programming. *See* Jackie DeFusco, *Bill Shortening Prison Sentences for Good Behavior Excludes Several Inmates*, ABC 8News (Sept. 9, 2020, 11:18 PM).[2]

31.    The amended statute made all incarcerated people eligible for the expanded credits, with a narrow exception for those convicted of specifically enumerated crimes. *See* Va. Code Ann. § 53.1-202.3.

---

[1] Available at: https://vscc.virginia.gov/Annual%20Reports/2020%20VSCC%20Annual%20Report%20-%20FINAL.pdf.

[2] Available at https://www.wric.com/news/bill-shortening-prison-sentences-for-good-behavior-excludes-several-inmates/.

32.     This narrow exception excludes only two groups of offenses from the new ESC program. First, it excludes people convicted of "any violation of" or "any felony violation of" certain statutes, including first- and second-degree murder, lynching, terrorism, and treason. *See id.* at § 53.1-202.3(A)(2)–(4), (6)–(8), (11)–(16), (17)(a), (c)–(e), (g)–(j). Second, it excludes persons convicted of several offenses enumerated in the statute itself, including robbery and carjacking. *See id.* § 53.1-202.3(A)(1)–(2), (6), (9) –(10), (17)(b), (f). The statute does not exclude inchoate versions of the listed offenses. Thus, an individual convicted of "attempted robbery" or "attempted carjacking," for example, is clearly eligible for expanded ESCs under the statute.

33.     Everybody who is not explicitly excluded is entitled to earn expanded sentence credits. VADOC has no discretion to deny people the ESCs to which they are entitled by statute. *Id*. § 53.1-202.3(B) ("For any offense other than those enumerated in subsection A for which sentence credits may be earned, earned sentence credits *shall* be awarded and calculated . . . ." (emphasis added)).

34.     The amended ESC statute removes the discretion that VADOC previously had in assigning credits. Those who "participate in and cooperate with all programs to which the person is assigned" and "who have no more than one minor correctional infraction and no serious correctional infractions" must receive 15 ESCs for every 30 days of incarceration (Level I). *Id.* § 53.1-202.3(B)(1). Those "who participate in and cooperate with all programs, job assignments, and educational curriculums to which [they are] assigned . . . , but who require improvement in not more than one area," must receive 7.5 ESCs per 30 days served (Level II). *Id.* § 53.1-202.3(B)(2). Those who participate and cooperate in all programs, assignments, and curricula, but "require significant improvement in two or more areas" must receive 3.5 ESCs per 30 days served (Level III). *Id*. § 53.1-202.3(B)(3). Finally, those who "willfully fail[] to participate

in or cooperate with all programs, job assignments, and educational curriculums . . . or . . . cause[] substantial security or operational problems at the correctional facility" receive no ESCs (Level IV). *Id*. § 53.1-202.3(B)(4).

35.    The law makes it mandatory that VADOC both provide opportunities to enroll in programming and award expanded ESCs to individuals who do so. *See id.* § 53.1-202.5 (VADOC "shall" provide opportunities and programming at all facilities); *id.* § 53.1-202.3(B) (VADOC "shall" award credits based on the classification scheme).

36.    The new program also increases the maximum number of ESCs that incarcerated people may receive. Whereas the prior statute authorized a maximum of 4.5 ESCs per 30 days in prison, the new statute authorizes up to 15 ESCs for every 30 days. *See* H.B. 5148, 2020 Gen. Assemb., 1st Spec. Sess. (Va. 2020).

37.    The amended earned sentence credit program went into effect on July 1, 2022. It applies retroactively:

> That the provisions of § 53.1-202.3 of the Code of Virginia, as amended by this act, ***shall apply retroactively to the entire sentence*** of any person who is confined in a state correctional facility and participating in the earned sentence credit system on July 1, 2022. If it is determined that, upon retroactive application of the provisions of § 53.1-202.3 of the Code of Virginia, as amended by this act, the release date of any such person passed prior to the effective date of this act, the person ***shall be released*** upon approval of an appropriate release plan and within 60 days of such determination unless otherwise mandated by court order.

H.B. 5148 § 4 (emphasis added). The delay between the enactment of the law and the effective date was intended to allow VADOC time to implement the new system and re-calculate the sentences of those eligible for additional sentence credits. While the release date varies by individual, the process for determining that release date is a simple mathematical formula based on the time each person has spent at each level.

**VADOC Refuses to Fully Implement the New ESC Program**

38.    When the amended law passed, VADOC failed to release many people who were entitled to be let out. Despite the General Assembly's clear instructions, VADOC unilaterally determined that people who had been convicted of inchoate versions of excluded offenses would be ineligible for expanded ESCs, and it thus refused to grant eligible people their credits. As relevant here, the group to which VADOC denied credits included Mr. Puryear and the other members of the class, who had convictions for inchoate offenses related to robbery and carjacking. And because it withheld ESCs to which incarcerated individuals were entitled, VADOC also detained those people after they were entitled to release, sometimes long after.

39.    VADOC detained people even though the statutory language is clear, and even though VADOC's conduct demonstrates that it *knew* the statutory language does not exclude people convicted of inchoate offenses related to robbery and carjacking from earning enhanced ESCs.

40.    Before the amended law went into effect, then-VADOC Director Defendant Clarke sought an advisory opinion from then-Virginia Attorney General Mark Herring about how to apply some provisions of the amended ESC law.[3] Critically, Clarke did *not* seek an advisory opinion as

---

[3] In particular, Clarke sought Herring's guidance as to:
(1) whether the "any felony violation" language in § 53.1-202.3(A)(6)–(8), (13)–(16), (17)(a) includes offense modifiers "Conspiracy, Attempts, Solicit, Solicit Juvenile to Commit, Accessory Before the Fact and Principal 2nd Degree";
(2) whether persons convicted of the same modifiers applied to aggravated murder, a charge of conviction not specifically listed in § 53.1-202.3, are exempted from enhanced ESCs;
(3) whether § 53.1-202.3(A)(10), which excludes from enhanced ESCs persons convicted of "[c]riminal sexual assault punishable as a felony," encompasses felony attempted rape, forcible sodomy, object sexual penetration, or aggravated sexual battery; and
(4) how to interpret the list of enumerated offenses in § 53.1-202.3(17), which excludes from enhanced ESCs persons convicted of "[a] second or subsequent violation" of those enumerated offenses. *See* Letter from Mark R. Herring, Att'y Gen., Va., to Harold W. Clarke, Dir., VADOC (Dec. 21, 2021).

to how § 53.1-202.3(A)(9), which addresses robbery and carjacking, should be interpreted. That is, when Clarke sought guidance regarding provisions of the statute that he considered to be ambiguous, he did not seek guidance regarding the provision of the statute concerning the class members, *i.e.*, § 53.1-202.3(A)(9). The statutory provision demonstrating the class members' entitlement to credits was clear; it needed no elucidation from the attorney general, and Clarke sought none.

41.    When now-Virginia Attorney General Jason Miyares came into office, Director Clarke sought a second opinion on the same questions. Again, Clarke did not seek, and Miyares did not offer, any opinion about how to interpret § 53.1-202.3(A)(9), the provision relevant to the class.

42.    In spite of twice seeking opinions on alleged ambiguities in the statute, Defendant Clarke never sought an opinion about any of the offenses relevant to Mr. Puryear or the class. Nevertheless, and in spite of class members' unambiguous statutory entitlement to expanded credits, Defendants denied expanded ESCs to people with convictions for inchoate versions of robbery and carjacking.

43.    On July 6, 2023, the Virginia Supreme Court clarified the language Clarke had sought guidance on, explicitly holding that individuals convicted of certain inchoate versions of excluded offenses are entitled to expanded ESCs. *See Prease v. Clarke*, 888 S.E.2d 758, 762 (Va. 2023). In *Prease*, an individual serving a sentence for attempted aggravated murder filed a habeas petition challenging VADOC's denial of expanded ESCs that would have entitled him to release. The statute does exclude those with aggravated murder sentences from the expanded ESC scheme because it excludes people with Class 1 felonies, *see* Va. Code Ann. § 53.1-202.3(A)(1), but as to people with *attempted* aggravated murder sentences, the Virginia Supreme Court affirmed what is

11

clear from the text of the statute: they are entitled to expanded credits, *see Prease*, 888 S.E.2d at 762.[4]

44.     The *Prease* decision affirmed that, unless explicitly enumerated in the text of the statute, *all* offenses are eligible for expanded ESCs. Inchoate offenses are not the same as their completed counterparts, and the exclusion from expanded ESCs of a completed offense does not implicitly exclude related inchoate offenses.

45.     Nevertheless, even after *Prease*, VADOC continued to deny expanded ESCs to and imprison people convicted of inchoate versions of excluded offenses, including Mr. Puryear and members of the class.

46.     VADOC's policy and practice of denying individuals convicted of inchoate offenses their rightfully earned ESCs was created and carried out by the Director of VADOC— first Defendant Clarke, then Defendant Dotson—who ordered that eligible individuals be denied expanded ESCs and, by extension, release.

47.     Upon information and belief, VADOC sent a form letter to each such individual informing them that they would not receive the ESCs to which they were entitled. After receiving these letters, people were not given any opportunity to be heard, to present or confront evidence, or to appeal this decision.

---

[4] The Court reasoned that, because attempted aggravated murder (like all inchoate offenses) is distinct from its completed counterpart—indeed, it is defined by a different section of the Virginia Code—the inclusion of Class 1 felonies on the list of excluded offenses did not encompass attempted aggravated murder. *See Prease*, 888 S.E.2d at 762. Thus, the plain language of § 53.1-202.3(A) did not exclude Mr. Prease, and he and all others like him were entitled to the expanded ESCs. *Id.*

48.     This policy of denying individuals both their rightful credits and any opportunity to appeal this denial was a system-wide policy enacted by Defendants and applied similarly to all members of the class.

### Leslie Puryear

49.     Plaintiff Leslie Puryear is one of many individuals who has been injured by VADOC's violations of clearly established law.

50.     Mr. Puryear was convicted of conspiracy to commit robbery, accessory after the fact, burglary, use of a firearm in a felony, and attempted robbery. Of these convictions, all but the attempted robbery and use of a firearm charge were suspended. He was committed to VADOC custody on March 24, 2011. These convictions constituted violations of his parole, which added to his sentence. Like all other class members, Mr. Puryear's sentence allowed him to receive expanded ESCs under the amended statute.

51.     Mr. Puryear was sentenced to a total of 18 years, 8 months, and 26 days in a VADOC prison. When he was sentenced, his projected release date from prison was April 21, 2025.

52.     For the entire time that he was incarcerated, Mr. Puryear was eligible to participate in the ESC program. *See* Va. Code Ann. § 53.1-202.2(A).

53.     From August 30, 2011, the beginning of his incarceration, onward, Mr. Puryear earned a Level I classification and qualified for the maximum number of ESCs, *i.e.*, 4.5 ESCs per 30 days in prison. He worked hard to earn sentence credits by completing mental health and job readiness programs, including Thinking for A Change and Ready for Work Skill Training. He received twelve certifications, and he worked outside the gate as a lead crew member at Baskerville

Correctional Center. He also served as a mentor to other incarcerated individuals, coaching them on how to resolve disputes through dialogue.

54.     Mr. Puryear was considered by other incarcerated people and by prison staff to be a leader and exemplar of good behavior. He served in numerous leadership roles while incarcerated, including leading group discussions between incarcerated individuals and prison staff. He never had a major infraction for the entire time he was incarcerated.

55.     None of the offenses for which Mr. Puryear was sentenced are excluded from eligibility by the amended ESC statute; while "robbery" is excluded, *attempted* robbery is not. Thus, Mr. Puryear was entitled to expanded credits calculated under the new framework. Had these credits been properly applied, he should have been released from VADOC custody within 60 days of July 1, 2022, *i.e.*, the new law's effective date.

### VADOC's Communications Concerning Release and Decision Not to Apply Credits to the Class

56.     On April 13, 2022, Attorney General Miyares issued his opinion that inchoate versions of the "any violation of" offenses were excluded from the ESC program. As explained above, this letter did not concern the convictions of the class members.

57.     Accordingly, the next day, on April 14, 2022, VADOC posted a notice in the housing areas about the expanded credit program. The notice said that "assaultive and sex-related offenses including, but not limited to Murder, Rape, Robbery, Malicious Wounding, and Indecent Liberties" were excluded, but it did not discuss the offenses of the class members, *i.e.*, inchoate offenses related to robbery and carjacking.

58.     When the notice was posted, Mr. Puryear was incarcerated at Lunenburg Correctional Center in Victoria, Virginia, and shortly thereafter, on or about April 20, 2022, a VADOC counselor told Mr. Puryear that he would be released that summer.

14

59.    Like other people who were told they would be released, Mr. Puryear worked with a VADOC counselor to prepare, working with the Community Release Unit on a re-entry plan, beginning the process of getting a photo ID, and notifying his family that he was coming home.

60.    A few months later, on or about July 29, 2022, VADOC officials reversed course. They told class members, including Mr. Puryear, that pursuant to the agency's changed policy, they were denying them expanded ESCs and class members would not be released until their eligible dates, as calculated without the expanded credits. In Mr. Puryear's case, this meant a release date of nearly three years later, in April 2025.

61.    Mr. Puryear was given no opportunity to be heard, to present or confront evidence, or to appeal this decision. On information and belief, no other class member was given an opportunity to be heard, present or confront evidence, or appeal the decision either.

62.    VADOC's decision not to apply the expanded credit scheme was contrary to the explicit language of § 53.1-202.3(A)(9), which excludes "[r]obbery under § 18.2-58" and "carjacking under § 18.2-58.1" from expanded ESCs, but does not include associated inchoate offenses.[5]

63.    Defendants continued to deny Mr. Puryear and others similarly situated expanded ESCs and to incarcerate them despite the plain and unambiguous terms of the statute. They continued to deny Mr. Puryear and others similarly situated expanded ESCs even after *Prease*, which reemphasized that the statute did not exclude people convicted of inchoate offenses from expanded ESCs by virtue of excluding people with related completed offenses.

---

[5] Mr. Puryear had also been convicted under § 18.2-22 (conspiracy to commit robbery). However, during the relevant time, his sentence for conspiracy to commit robbery was suspended, and he was not serving any time for that offense.

## VADOC Releases the Class Members Following
## Mr. Puryear's Habeas Petition

64.    After Defendants refused to release members of the class, including Mr. Puryear, Mr. Puryear filed a habeas corpus petition on September 26, 2023, challenging the continued refusal to release him pursuant to the ESCs he was entitled to by statute.

65.    On November 6, 2023, VADOC filed a motion to dismiss, challenging the habeas petition on statute of limitations grounds.

66.    However, just three days later, without a decision from the Court, VADOC reversed course, granting Mr. Puryear his due credits. Mr. Puryear was released from VADOC custody on November 9, 2023.

67.    On November 13, 2023, VADOC announced, "[i]n light of *Prease v. Clarke* . . . VDOC has determined that prisoners serving sentences for the inchoate crimes associated with aggravated murder, robbery, and carjacking are not excluded from eligibility for enhanced earned sentence credits." *See* Exhibit A at 3 (Respondents' Suggestion of Mootness, *Puryear v. Dotson*, No. 230688 (Va. Nov. 13, 2023)).

68.    Based on this announcement, it appears that in November 2023, in response to Mr. Puryear's habeas petition, VADOC retroactively granted expanded ESCs to otherwise-eligible individuals who had been convicted of inchoate crimes associated with robbery and carjacking and released individuals whose expanded ESC calculations entitled them to this remedy.[6]

69.    Through this process, VADOC was forced to identify and release all eligible individuals with similar charges to Mr. Puryear's, *i.e.*, the class members.

---

[6] *Prease* expressly required VADOC to provide expanded ESCs to people with inchoate crimes associated with aggravated murder, *see* 888 S.E.2d at 762, so the new group of people VADOC released following Mr. Puryear's habeas petition were people with inchoate crimes associated with robbery and carjacking, the members of the proposed class here.

## CLASS ALLEGATIONS

70.     VADOC's decision to deny expanded ESCs to individuals who were clearly eligible for them affected not just Mr. Puryear, but dozens if not hundreds of others. These individuals were all harmed by the same policy: Defendants Clarke and Dotson's agency-wide decision to exclude people convicted of inchoate crimes associated with robbery or carjacking from expanded ESCs, in direct contravention of Va. Code Ann. § 53.1-202.3 and *Prease*.

71.     Mr. Puryear brings this Complaint as a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) on behalf of himself and similarly situated individuals.

72.     Mr. Puryear requests this Court certify a class pursuant to Fed. R. Civ. P. 23(b)(3) consisting of all individuals previously in VADOC custody who were serving a sentence for an inchoate crime associated with robbery or carjacking, who were denied expanded ESCs pursuant to VADOC's policy of excluding individuals convicted of inchoate offenses from expanded ESCs until approximately November 2023, and who would have been released earlier than they were but for Defendants' policy.

73.     Mr. Puryear is a member of the class he seeks to represent. The class asserts claims under 42 U.S.C. § 1983 and under Virginia state law.

74.     This action is properly maintained as a class action because:

> a.     Joinder of all class members is impracticable because of the size of the class. The proposed class consists of people with inchoate offenses related to robbery and carjacking who were eligible for release pursuant to expanded ESCs prior to November of 2023 but who VADOC refused to release pursuant to Defendants' policy of wrongly denying people with these offenses expanded ESCs. While the exact size of the class is not known to Mr. Puryear, VADOC

17

did announce that by December 4, 2023, just one month after Mr. Puryear's release, it had identified over 150 incarcerated people with convictions for inchoate crimes related to robbery and carjacking, released 31 people to whom it had previously denied expanded ESCs, and was continuing to process records and recalculate release dates based on its belated ESC grant. Furthermore, between October 2023 and December 2023, VADOC's average daily population decreased by more than 600, potentially reflecting the release of individuals who had previously been denied credits to which they were entitled.

b.   People released after long periods of incarceration are uniquely unlikely to have the resources to pursue litigation individually or as joined plaintiffs. As such, the likely alternative to disposition of this matter as a class action is that most class members will be unable to vindicate their rights.

c.   Defendants acted and refused to act on grounds generally applicable to the class.

d.   The claims alleged on behalf of the class raise common questions of law and fact and predominate over questions affecting only individual members. All members were in VADOC custody and subject to the same policy: denying them earned sentence credits. All class members were denied release even after VADOC knew or should have known that they were entitled to be released. Common questions of fact and law include, among others:

i.   What Defendants' policy was for applying ESCs to people convicted of inchoate offenses related to robbery and carjacking;

ii.    How Defendants determined which categories of offenses were excluded from expanded ESCs under Va. Code Ann. § 53.1-202.3(A);

iii.   What roles Defendants played in making, promulgating, and enforcing VADOC policy around ESCs;

iv.   Whether Defendants continue to deny expanded ESCs to and thus over-detain those whose crime of conviction is an inchoate version of robbery or carjacking;

v.    Whether Defendants' policy and practice of denying statutorily mandated ESCs (and thus release) for inchoate versions of robbery or carjacking violated the substantive or procedural due process protections of the Fourteenth Amendment;

vi.   Whether Defendants' policy and practice of denying statutorily mandated ESCs (and thus release) for inchoate versions of robbery or carjacking violated the Eighth Amendment's protections;

vii.  Whether Defendants' policy and practice of denying statutorily mandated ESCs (and thus release) for inchoate versions of robbery or carjacking violated the right to be free from false imprisonment under Virginia state law.

e.    Mr. Puryear's injuries are typical of the class. That typicality stems from the fact that Defendants detained Mr. Puryear and every other class member after they were supposed to be released pursuant to the same policies and practices and in violation of the same constitutional and legal rights.

f.    Mr. Puryear and his counsel will fairly and adequately represent the interests

of the class. Mr. Puryear has no interest that is antagonistic to the interests of

the other class members, and class counsel have extensive experience litigating

complex civil rights matters, including class actions, in federal court.

### INJURY TO DETAINED CLASS MEMBERS

75.    As a result of Defendants' actions, which were both contrary to law and without

penological justification, Mr. Puryear and those similarly situated suffered a deprivation of their

constitutional rights; emotional distress, pain and suffering, and injury to dignity associated with

a prolonged loss of liberty; and the loss of economic opportunity.[7]

76.    Defendants' refusal to give Mr. Puryear and those similarly situated the expanded

ESCs to which they were statutorily entitled resulted in their imprisonment for weeks or months

after they were entitled to release. Mr. Puryear, for example, was imprisoned for nearly seventeen

months after which he was legally entitled to release.

77.    By over-detaining Mr. Puryear and those similarly situated, Defendants violated

their clearly established constitutional rights to substantive and procedural due process and their

right against cruel and unusual punishment. The violation of constitutional rights is, in and of itself,

a compensable injury.

---

[7] Courts have repeatedly held that injuries associated with over-detention can be quantified and redressed on a class-wide basis. *See, e.g.*, *Betances v. Fischer*, 304 F.R.D. 416, 431 (S.D.N.Y. 2015), *rev'd on other grounds*, --- F.Supp.3d ----, 2023 WL 8699001 (Dec. 15, 2023) (certifying Rule 23(b)(3) class in over-detention case because "[g]eneral damages for the loss of liberty need not be specifically proved—it may be inferred from the circumstances of the arrest or imprisonment and would include at least the value of the time lost by the plaintiff during the period of detention") (citation & quotation marks omitted); *Aichele v. City of Los Angeles*, 314 F.R.D. 478, 496 (C.D. Cal. 2013) (certifying Rule 23(b)(3) class in over-detention case because "[g]eneral damages for pain and suffering and loss of dignity" can be determined on a class-wide basis).

78.    All class members, including Mr. Puryear, suffered anxiety, distress, loss of dignity, and other negative emotional effects from over-detention. They missed significant family and life events outside of prison. Mr. Puryear, for example, missed some of the most important moments in his and his family's lives, including his son's last football game and graduation and the birth of his grandson. Had he been released when he was entitled to, in the summer of 2022, he would have been present for these events. He will never be able to get that time back. Class members, including Mr. Puryear, also suffered the emotional distress of learning they would be released only to have that release improperly revoked. Mr. Puryear and those similarly situated suffer emotional distress stemming from their over-detention to this day.

79.    As with all people who are confined in prison improperly, Mr. Puryear and other class members missed out on economic opportunities they would have had had they been free. All class members were unable to work and earn income to support themselves and their families for the time in which they were over-detained. For example, Mr. Puryear had a job as a truck driver lined up for his planned release in July 2022, one that promised to be lucrative enough to sustain him and his family. However, by the time he was released in November 2023, the job was no longer available. Instead, Mr. Puryear has been forced to work two lower-paying jobs to support his family. The injury of loss of job opportunities is common to the class members who experience over-detention.

### CAUSES OF ACTION
### COUNT I
**Violation of the Fourteenth Amendment (42 U.S.C. § 1983)**
**Substantive Due Process**
**(All Plaintiffs v. All Defendants)**

80.    On behalf of himself and the class, Mr. Puryear repeats and incorporates by reference all allegations contained in paragraphs 1–79.

81. The language of Va. Stat. Ann. § 53-202.3(B) is mandatory. The statute states that credits "shall be awarded" to persons meeting the stated criteria. As such, the Virginia General Assembly established a right to expanded ESCs, and to release in accordance with those ESCs, for all who meet the statutory guidelines.

82. Mr. Puryear and the class members met those requirements and thus had a right to expanded ESCs and to release pursuant to those credits.

83. The right to timely release from incarceration, via statutorily mandated sentence credits or otherwise, was clearly established—including within the Fourth Circuit—prior to July 1, 2022.

84. By failing to release Mr. Puryear and those similarly situated, even though it was or should have been known that they were legally entitled to expanded ESCs, Defendants acted with deliberate indifference to the aforementioned substantive due process right to timely release held by Mr. Puryear and class members.

85. Defendants acted with more than mere negligence. Defendants were aware of the 2022 changes to Virginia law and did not seek clarification on the statutory text concerning robbery or carjacking, although they sought clarification of other parts of the statute. They were also aware of the Virginia Supreme Court's decision in *Prease* and the risk that Mr. Puryear and class members would be detained longer than allowed should Defendants fail to properly implement the law. Yet Defendants continued to deny Mr. Puryear and class members their mandated expanded ESCs and thus to detain them.

86. Defendants' policies resulted in Mr. Puryear and class members' detention for weeks, months, and in some cases more than a year longer than VADOC was legally authorized to detain them.

87.     Mr. Puryear and class members were harmed by the violation of their constitutional rights, as well as by each day of unauthorized and unnecessary incarceration.

**COUNT II**
**Violation of the Fourteenth Amendment (42 U.S.C. § 1983)**
**Procedural Due Process**
**(All Plaintiffs v. All Defendants)**

88.     On behalf of himself and the class, Mr. Puryear repeats and incorporates by reference all allegations contained in paragraphs 1–79.

89.     The language of Va. Stat. Ann. § 53-202.3(B) is mandatory. The statute states that credits "shall be awarded" to persons meeting the stated criteria. As such, the Virginia General Assembly established a right to expanded ESCs, and release in accordance with those ESCs, for all who meet the statutory guidelines.

90.     Mr. Puryear and the class members met those requirements and thus had a right to expanded ESCs and to release pursuant to those credits.

91.     The right to timely release from incarceration, via statutorily mandated sentence credits or otherwise, was clearly established—including within the Fourth Circuit—prior to July 1, 2022.

92.     Defendants deprived Mr. Puryear and the class members of this right in the absence of constitutionally adequate minimum procedures. Mr. Puryear and the class members were not given an opportunity to be heard, at a meaningful time and in a meaningful manner, regarding their entitlement to ESCs and release.

93.     They were not given adequate notice of the evidence being used to deny them ESCs.

94.     They were not given an opportunity to rebut and confront VADOC's evidence and to present their own.

95.     They were not given the opportunity to appeal VADOC's unilateral decisions, nor any other adversarial hearing process.

96.     Defendants' policies resulted in Mr. Puryear's and class members' detention for weeks, months, or in some cases more than a year longer than VADOC was authorized to detain them.

97.     Mr. Puryear and class members were harmed by the violation of their constitutional rights, as well as by each day of unauthorized and unnecessary incarceration.

### COUNT III
### Violation of the Eighth Amendment (42 U.S.C. § 1983)
### Cruel and Unusual Punishment
### (All Plaintiffs v. All Defendants)

98.     On behalf of himself and the class, Mr. Puryear repeats and incorporates by reference all allegations contained in paragraphs 1–79.

99.     Detention beyond one's term of imprisonment is a total and unjustified deprivation of one's fundamental liberty right.

100.    Defendants acted with more than mere negligence. Defendants were aware of the 2022 changes to Virginia law and did not seek clarification on the statutory text concerning robbery or carjacking, although they sought clarification of other parts of the statute. They were also aware of the Virginia Supreme Court's decision in *Prease* and the risk that Mr. Puryear and class members would be detained longer than allowed should Defendants fail to properly implement the law. Yet Defendants continued to deny Mr. Puryear and class members their mandated expanded ESCs and thus to detain them.

101.    Mr. Puryear and class members were harmed by the violation of their constitutional rights, as well as by each day of unauthorized and unnecessary incarceration.

## COUNT IV
## False Imprisonment
## (All Plaintiffs v. All Defendants)

102.    On behalf of himself and the class, Mr. Puryear repeats and incorporates by reference all allegations contained in paragraphs 1–79.

103.    Virginia defines false imprisonment as the "restraint of one's liberty without any sufficient legal excuse." *Montgomery Ward & Co. v. Wickline*, 50 S.E.2d 387, 388 (Va. 1948) (citation omitted).

104.    Defendants falsely imprisoned Mr. Puryear and those similarly situated by failing to release them even though they were legally entitled to release under Va. Code Ann. § 53.1-202.3. In so doing, Defendants deprived Plaintiffs of their liberty for weeks, months, or more than a year without any sufficient legal excuse.

105.    Defendants' restraint of Plaintiffs' liberty without legal excuse was objectively unreasonable. The plain language of Va. Code Ann. § 53.1-202.3, as well as the Virginia Supreme Court's decision in *Prease*, plainly entitled Mr. Puryear and the State Law Class to earned sentence credits that would have resulted in their release from prison.

106.    By restraining Mr. Puryear and those similarly situated for weeks, months, or over a year in the face of law that objectively entitled them to release, Defendants acted without good faith or reasonable belief that Plaintiffs' continued incarceration was legally excused.

107.    Mr. Puryear and class members were harmed by the violation of their constitutional rights, as well as by each day of unauthorized and unnecessary incarceration.

**REQUEST FOR RELIEF**

108.     WHEREFORE, Plaintiff respectfully prays that the Court grant him the following

relief:

1.   Certify a class pursuant to Rule 23 of the Federal Rules of Civil Procedure;

2.   Enter a declaratory judgment finding that that Defendants' actions violated the

     rights of Plaintiff and the class rights under the Eighth and Fourteenth

     Amendments to the United States Constitution, and the laws of the

     Commonwealth of Virginia;

3.   Award Mr. Puryear and class members compensatory damages in an amount

     to be determined by a jury that would fully compensate them for the injuries

     caused by Defendants' conduct as alleged;

4.   Award costs and reasonable attorneys' fees incurred in this action as provided

     in 42 U.S.C § 1988(b); and

5.   Order such additional relief as this Court deems just and appropriate.

**JURY DEMAND**

109.     Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury on all issues

triable as of right.

Dated: June 28, 2024

Respectfully submitted,

*/s/ Michael Allen*
Michael Allen (Va Bar. No. 25141)
Rebecca Livengood*
Ellora Thadaney Israni*
David DePriest*
Relman Colfax, PLLC
1225 19th St. NW, Suite 600
Washington, D.C. 20036
Tel: 202-728-1888
Fax: 202-728-0848
mallen@relmanlaw.com
rlivengood@relmanlaw.com
eisrani@relmanlaw.com
ddepriest@relmanlaw.com

* *pro hac vice* application forthcoming

*Attorneys for Plaintiff*