IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

LESLIE PURYEAR,

       Plaintiff,

v.                               CASE NO.  3:24-cv-479

CHADWICK DOTSON and
HAROLD CLARKE,

       Defendants.

**<u>MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS</u>**

      In 2020, the Virginia General Assembly adopted legislation providing some inmates with an opportunity to earn additional sentence-reducing credit, above and beyond that already allowed under then-existing law.  But Virginia Code § 53.1-202.3, as amended, enumerated multiple convictions for which the enhanced sentence-reducing credit did not apply.  When interpreting this new statute, VDOC—relying on an official opinion from the Virginia Attorney General—initially understood the law to mean that convictions for related inchoate offenses were also disqualified from earning the additional sentence-reducing credit.

      The amended statute was the subject of repeated litigation.  In July 2023, the Virginia Supreme Court held that a conviction for attempted aggravated murder was not excluded from earning additional sentence-reducing credits.  *Prease v. Clarke*, 302 Va. 376 (2023).  But that opinion left unanswered whether other inchoate offenses might be encompassed within the remaining enumerated exceptions.  *Id.* at 384.  That question was not laid to rest until April 2024, when the Virginia Supreme Court explicitly held that an inchoate offense, not otherwise

1

specifically listed in Code § 53.1-202.3, remained eligible for the additional sentence-reducing credit. *Vasquez v. Dotson*, 303 Va. 97 (2024).

In 2011, Plaintiff Puryear was committed to VDOC custody to serve an eighteen-plus year sentence for attempted robbery, among other offenses. "Robbery" is one of the crimes disqualified from earning additional sentence-reducing credit under Code § 53.1-202.3. When the amended version of Code § 53.1-202.3 went into effect in July 2022, Puryear was deemed ineligible to receive the additional sentence-reducing credits, and he remained in custody. However, before *Vasquez* was issued, VDOC reconsidered its position on inchoate offenses related to robbery and carjacking. In November 2023, inmates serving a sentence for those offenses—including Puryear—were awarded additional credit and, if appropriate, released from custody.

Puryear has now filed this putative class action on behalf of himself and other similarly-situated inmates: specifically, inmates previously serving a sentence for inchoate crimes associated with robbery or carjacking, who he alleges would have been released from custody around July 1, 2022, but for the initial decision to exclude these convictions from earning additional sentence-reducing credit under Code § 53.1-202.3, as amended. Puryear claims that Defendants—the current and former Directors of VDOC—violated his substantive and procedural due process rights, as well as his Eighth Amendment rights, by declining to release him earlier based on their prior understanding that his convictions excluded him from eligibility under the amended statute. He further alleges that Defendants' actions constituted the common law intentional tort of false imprisonment.

Those claims fail. Because an inmate's federal constitutional rights are not violated when that inmate is held past a discretionary, "good time" release date—as opposed to being held past

a maximum allowable release date—Puryear has not stated a plausible constitutional claim.  And even if this Court were to find that Puryear has sufficiently identified a claimed constitutional violation, Defendants, in interpreting and attempting to apply the provisions of a new state statute, did not violate clearly established law.  They are therefore entitled to qualified immunity. For these reasons, and as discussed below, Defendants request that this Court dismiss the complaint for failure to state a claim upon which relief can be granted.

## STATEMENT OF FACTS

"[W]hen ruling on a defendant's motion to dismiss, a [trial] judge must accept as true all of the factual allegations contained in the complaint."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  So viewed, the essential allegations of the complaint are as follows.

### *Legal Background*

Under Virginia law, "[e]very person who is convicted of a felony offense committed on or after January 1, 1995 and who is sentenced to serve a term of incarceration in a state or local correctional facility shall be eligible to earn sentence credits" to reduce their overall active term of incarceration.  Code § 53.1-202.2(A).  "One earned sentence credit [] equal[s] a deduction of one day from a person's term of incarceration."  *Id.*; *see also* Compl. ¶ 3.

The rate at which sentence-reducing credits may be earned is established by Code § 53.1-202.3.  Under prior law, the maximum amount of sentence-reducing credit that could be earned was 4.5 days for every 30 days served.  Compl. ¶ 5.  However, in 2020, the Virginia General Assembly amended Code § 53.1-202.3 to allow some inmates to earn additional sentence-reducing credits—up to a maximum of 15 days for every 30 days served.  The new law had a delayed-effective date of July 1, 2022, and would apply retroactively once effective.  Compl. ¶¶ 5-6.

Despite some inmates becoming eligible for these enhanced sentence-reducing credits, many inmates were not. Code § 53.1-202.3, as amended, enumerated many convictions that remained ineligible for the expanded sentence-reducing credits; the maximum rate at which those inmates could earn sentence-reducing credits remained at 4.5 days for every 30 days served. Compl. ¶ 7; *see also Swart v. Miyares*, No. 3:23cv753, 2024 U.S. Dist. LEXIS 24180, at *2-3 (E.D. Va. Jan. 31, 2024); *Anderson v. Clarke*, 302 Va. 400, 405-07 (2023). Specifically, the General Assembly made the following general categories of offenses ineligible for expanded sentence-reducing credit:

- Class 1 felonies

- Solicitation to commit murder under Code § 18.2-29, and other homicide offenses

- Lynching and death during a lynching by mob

- Conspiracy to commit terrorism; providing material support to an act of terrorism and a death results; possessing/using/manufacturing a weapon of terrorism

- Kidnapping or abduction

- Malicious felonious assault or malicious bodily wounding; strangulation; female genital mutilation; felony assault of a family member

- Felony stalking

- Felony violating a protective order

- Robbery or carjacking

- Felony sexual assault

-  Burglary with the intent to commit murder/rape/arson/robbery

- Using a machine gun or sawed-off shotgun to commit a crime of violence

- Felony prostitution-related offenses

- Felony sexual crimes against a minor

- Felony obscenity offenses

4

- Any cruelty to animal offense that causes death or serious injury to the animal; trespass upon church or school property with the intent to abduct a child; treason; escape from custody; leaving the Commonwealth while under conditional release; using a minor in the production of sexually explicit material; felony child endangerment; and

- A second or subsequent violation of: felony animal fighting; voluntary manslaughter; unlawful wounding by mob; felony mob violence; conspiracy to commit an act of terrorism; bioterrorism; unlawful wounding; unlawful wounding of a law enforcement officer; attempted poisoning; adulteration of food with intent to injure; arson of an occupied structure; arson of an occupied meeting house; burglary; possession of child pornography; burning a cross or other object with the attempt to intimidate; displaying a swastika or noose with the intent to intimidate; engaging in unlawful paramilitary activity; felony withholding of wages.

Code § 53.1-202.3. Although some of the categories of offenses listed in the amended version of the statute contained language indicating that "any violation" or "any felony violation" of the listed crime would disqualify an individual from earning enhanced sentence-reducing credit on that conviction, that language did not appear before every listed offense. *See id.*

The new statute therefor contained ambiguity as to whether certain offenses (including inchoate offenses) were eligible for the additional sentence-reducing credit. In 2022, Defendant Clarke sought an advisory opinion from the Office of the Attorney General as to whether the language "any felony violation of," as contained in Code § 53.1-202.3, included inchoate offenses (conspiracy, attempt, solicitation) as well as convictions involving an accomplice theory of liability (accessory before the fact and principal in the second degree). The resulting official opinion advised that "any felony violation" would include not only the completed primary offense, but also convictions involving accomplice theories of liability. The opinion additionally advised that the phrase "any felony violation" should include inchoate offenses, reasoning that excluding inchoate offenses from the scope of Code § 53.1-202.3 would lead to an absurd result. (*See* 4/13/22 Official Opinion, attached as Exhibit A). Relying on the Attorney General's official opinion as to the legal meaning of the statute, VDOC excluded all inchoate offenses

5

related to crimes specifically listed in Code § 53.1-202.3 from the scope of the expanded sentence-reducing credit statute.

The following year, in *Prease v. Clarke*, 302 Va. 376 (2023), the Virginia Supreme Court addressed whether "attempted aggravated murder"—a class 2 felony—fell within the scope of Code § 53.1-202.3(A)(1), which excluded, simply, a conviction for a "class 1 felony" from eligibility for enhanced sentence-reducing credit.  Because attempted aggravated murder is not a class 1 felony, the Virginia Supreme Court concluded that the plain language of Code § 53.1-202.3(A)(1) "does not operate to exclude individuals convicted of attempted aggravated murder from eligibility to receive expanded earned sentence credits."  *Id.* at 384.  However, *Prease* specifically declined to address whether "the General Assembly intended to exempt actual violations of the enumerated statues as well as the associated inchoate crimes from receiving expanded earned sentence credits" under Code § 53.1-202.3 as amended, reasoning that the "class 1 felony" vs. "class 2 felony" distinction was controlling under the circumstances presented.  *Id.*

Whether a conviction for an inchoate offense not otherwise specifically listed in Code § 53.1-202.3 might nevertheless constitute a disqualifying offense remained unanswered by the Virginia Supreme Court until April 2024.  In *Vasquez v. Dotson*, 303 Va. 97 (2024), the Virgina Supreme Court answered that question in the negative, reasoning that individuals indicted for a completed offense "cannot be convicted on that indictment for [the inchoate offense]," and vice versa, as the completed offense and the inchoate offense "are separate crimes with separate elements," and "[n]either is a lesser-included offense of the other."  *Id.* at 104.

*Plaintiff Puryear*

At the time of the 2020 statutory amendments, Plaintiff Puryear was serving a sentence for attempted robbery and use of a firearm in the commission of a felony, among other offenses. Compl. ¶ 50.  As initially calculated, Puryear's estimated release date was April 21, 2025. Compl. ¶ 51.  After the statutory amendments became effective on July 1, 2022, VDOC—in reliance on the 2022 Official Opinion from the Virginia Attorney General—understood Puryear's conviction for attempted robbery to be ineligible for enhanced sentence credits, even though he had been convicted of attempted robbery, rather than the completed offense.  Compl. ¶ 62.  He was therefore not released from custody at that time.  However, on November 9, 2023, VDOC released Puryear from custody after re-evaluating his sentence and awarding him additional sentence-reducing credits under Code § 53.1-202.3.  Compl. ¶ 66.  Of note, this release occurred prior to the Virginia Supreme Court's issuance of the *Vasquez* decision.

Defendant Clarke was the Director of the Virginia Department of Corrections (VDOC) when Code § 53.1-202.3 was amended.  Compl. ¶ 35.  Defendant Dotson succeeded Defendant Clarke as Director of VDOC in September 2023, approximately two months before Puryear's release from incarceration.  Compl. ¶ 24.

## ARGUMENT AND AUTHORITIES

"[T]he purpose of Rule 12(b)(6) is to test the legal sufficiency of the complaint." *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994).  Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a

sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556); *see also* Fed. R. Civ. P. (8)(a)(2); *Francis v. Giacomelli*, 588 F.3d 186 (4th Cir. 2009). Also, although the Court must consider all of the factual allegations of the complaint as true, the Court is not bound to accept a legal conclusion couched as a factual assertion, *Iqbal*, 556 U.S. at 663-64, nor should the Court accept a plaintiff's "unwarranted deductions," "rootless conclusions of law" or "sweeping legal conclusions cast in the form of factual allegations." *Custer v. Sweeney*, 89 F.3d 1156, 1163 (4th Cir. 1996).

In his complaint, Plaintiff has raised, on behalf of himself and all inmates similarly-situated, four claims to relief: a substantive due process claim, a procedural due process claim, an Eighth Amendment claim alleging cruel and unusual punishment, and a state-law claim for false imprisonment. For the reasons that follow, each of these claims should be dismissed.

## I.    The substantive due process claim fails to state a plausible claim to relief.

In Count I, Puryear alleges that failure to release him from custody on or around July 1, 2022, violated his substantive due process rights. Because Plaintiff was not held past his maximum allowable release date and because, regardless, Defendants are entitled to qualified immunity, this claim should be dismissed.

1.

The Fourth Circuit has recognized that "[i]ncarceration beyond the termination of one's sentence *may* state a claim under the due process clause." *Golson v. Dep't of Corr.*, No. 90-7344, 1990 U.S. App. LEXIS 17452, at *2-3 (4th Cir. Oct. 2, 1990) (emphasis added). Beyond that, the Fourth Circuit has not further addressed the precise contours of whether and when over-incarceration violates substantive due process.

However, the Supreme Court has held that there "is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 422 U.S. 1, 7 (1979).  Similarly, "the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison." *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974).  It follows that, where the inmate: (1) has not been required to serve more time than the sentence imposed, and (2) is not being held past a court-ordered release date, substantive due process is not implicated.

Plaintiff here does not contend that he was held past a court-ordered release date, or that he served more time than the active sentences imposed by his criminal convictions.  He argues, rather, that Defendants erred in calculating his release date by not applying sentence-reducing credit at an appropriate rate.  An alleged error in sentence calculation—one that does not result in an inmate serving more time than that authorized by his underlying criminal conviction and sentence—does not give rise to a substantive due process issue.  *Golson*, 1990 U.S. App. LEXIS 17452, at *2-3 ("Incarceration *beyond the termination of one's sentence* may state a claim under the due process clause and the Eighth Amendment." (emphasis added)); *see also Paternoster-Cozart v. Clarke*, No. 2:13cv539, 2014 U.S. Dist. LEXIS 105960, at *46 (E.D. Va. July 31, 2014) (noting that the Petitioner "fails to demonstrate a constitutional violation based on the manner in which his reduced sentence was calculated" where he received an active period of incarceration that was "more than a year and a half less than the time called for by his written plea agreements"); *cf. Goode v. Commonwealth*, No. 0459-06-2, 2007 Va. App. LEXIS 118 (Ct. App. Mar. 27, 2007) (declining to excuse a procedural default where "the record does not demonstrate that [the petitioner] has been required to serve more time than the sentence originally imposed").  Because an inmate is not deprived of substantive due process if he is

discharged from custody prior to the expiration of his maximum allowable sentence, Plaintiff has

not stated a substantive due process claim.  *See generally McNeil v. Director*, 407 U.S. 245, 246

(1972) ("*[W]hen his sentence expired*, the State lost the power to hold him, and [] his continued

detention violates his rights under the Fourteenth Amendment." (emphasis added)).

2.

Even if substantive due process were potentially implicated by holding an inmate past a

good time release date, the right to substantive due process does not require the imposition of

liability "whenever someone cloaked with state authority causes harm."  *Cnty. of Sacramento v.*

*Lewis*, 523 U.S. 833, 848 (1998).  Rather, in cases involving executive action, the right to

substantive due process protects against "egregious, arbitrary governmental conduct" that

"shocks the conscience."  *Young v. City of Mount Rainier*, 238 F.3d 567, 574 (4th Cir. 2001); *see*

*also Lewis*, 523 U.S. at 847 n.8.  Additionally, "to recover under the due process clause, a

plaintiff must establish that defendants acted with something more than mere negligence."

*Golson*, 1990 U.S. App. LEXIS 17452, at *3 (citing *Daniels v. Williams*, 474 U.S. 327, 334

(1986); *Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986)).

Moreover, as this Court has recognized, "[t]o establish [] a substantive . . . due process

claim, Plaintiffs must first demonstrate that [they] possessed a cognizable [] interest, rooted in

state law."  *Swart*, 2024 U.S. Dist. LEXIS 24180, at *27-28 (internal quotations omitted).  In

*Swart*, this Court recognized that "the credits set forth in [amended Code § 53.1-202.3] apply

mandatorily to all inmates within its purview," and, therefore, "the deprivation of such credits

*once vested* would amount to over-detention that *could* violate the Fourteenth Amendment's due

process clause."  *Id.* at *28 (emphases added).  However, "until the Virginia Supreme Court

conclusively determined that Plaintiffs fell within the scope of the state law . . . no cognizable

10

interest had yet accrued, as there was no state law origin from which Plaintiffs could be deprived." *Id.* at *29.

Here, Defendants are alleged to have mis-interpreted the provisions of a new state statute, relying an official opinion from the Virginia Attorney General. This is not the type of conscience-shocking, deliberate misconduct that gives rise to a substantive due process violation. *See Swart*, 2024 U.S. Dist. LEXIS 24180, at *31-32 ("[N]either Attorney General Miyares' conduct in rendering an advisory opinion nor Director Clarke's conduct in following that opinion violated Plaintiffs' Fourteenth Amendment substantive due process rights, even when viewing the facts in the light most favorable to Plaintiffs."). Moreover, as in *Swart*, until the Virginia Supreme Court issued the opinion in *Vasquez* in April 2024—conclusively holding that inchoate offenses not specifically listed in Code § 53.1-202.3(A) were not excluded from earning additional sentence-reducing credit—any "interest" in earlier release from custody had not yet vested. Absent a vested interest, there is no deprivation to form the basis for a due process claim. *See id.*

 Accordingly, even if the act of holding an inmate in custody past a good time release date—but not beyond the total active term of his criminal sentence—potentially implicates substantive due process, Plaintiff has not stated a plausible claim here. *See id.*

3.

Even if this Court were to determine that Plaintiff has adequately pled a violation of his substantive due process rights, Defendants are entitled to qualified immunity. Government actors are entitled to qualified immunity insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This principle ensures "that before they are

subjected to suit, officers are on notice that their conduct is unlawful." *Saucier v. Katz*, 533 U.S. 194, 206 (2001). "If the law did not put the officer on notice that his conduct would be clearly unlawful, . . . qualified immunity is appropriate." *Id.* at 202.

For the reasons discussed above, Puryear did not have a substantive due process right to release from custody prior to the expiration of his full active sentence. But even if that right existed, it was not clearly-established as of the time of the alleged misconduct: July of 2022.

As the Second Circuit has recently held, the law is not sufficiently clear that an inmate has a Fourteenth Amendment right to immediate release from custody on a conditional, good time release date, as opposed to at the expiration of their entire active sentence. Specifically, in *Hurd v. Fredenburgh*, 984 F.3d 1075 (2d Cir. 2021), an inmate was held past a mandatory statutory release date that should have been calculated by awarding him credit for time spent awaiting trial. However, he was not held past his maximum release date. Under those circumstances, the Second Circuit held that the inmate had plausibly alleged a constitutional violation, but further found that "[i]t was not clearly established during the period of [] prolonged detention that . . . an inmate has a liberty interest in mandatory conditional release protected by the Fourteenth Amendment's substantive due process clause." *Id.* at 1089. Specifically, the Court noted that "no decision has held that imprisonment past a mandatory conditional release date violates the Fourteenth Amendment's substantive protections." *Id.*

Similarly, there is no clear law from the Fourth Circuit or the Supreme Court establishing the parameters of the asserted substantive due process right, particularly when viewed at the appropriate level of specificity. And so neither Defendant was sufficiently on notice that his alleged misconduct might transgress constitutional boundaries. Defendants—as Directors of the Virginia Department of Corrections—are alleged to have misinterpreted a new, ambiguous

12

statute, in a manner that was ultimately determined to be incorrect by the Virginia Supreme

Court in *Vasquez*.  But until that newly-adopted statute was interpreted by the Virginia state

courts, Defendants were operating in an inherently gray area—and that is precisely where

qualified immunity applies.  *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992) (noting

that qualified immunity protects officials from liability for "bad guesses in gray areas").

Because Plaintiff did not have a clearly established constitutional right under the

Fourteenth Amendment to be released from custody on a conditional, good time release date—as

opposed to at the expiration of his maximum allowable sentence—Defendants are entitled to

qualified immunity on this claim.

**II.    The procedural due process claim fails to state a plausible claim to relief.**

In Count II, Puryear alleges that he, along with similarly-situated inmates, was denied a

"right" to early release without sufficient notice and an opportunity to be heard.  Because

inmates do not have a vested liberty interest in early release from custody, and because Puryear

has not adequately pled what additional procedures should have been employed to protect this

alleged interest, the procedural due process claim lacks merit.  And even if this Court were to

find that Puryear has sufficiently alleged a procedural due process violation, Defendants are

entitled to qualified immunity.

1.

Under the Due Process Clause of the Fourteenth Amendment, no state shall "deprive any

person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV.  "To

state a procedural due process violation, a plaintiff must (1) identify a protected liberty or

property interest and (2) demonstrate deprivation of that interest without due process of law."

*Prieto v. Clarke*, 780 F.3d 245, 248 (2015).

"A liberty interest may arise from the Constitution itself" or "from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). "An 'abstract . . . desire' or 'unilateral expectation' is insufficient to create a protectible interest." *Burnette v. Fahey*, 687 F.3d 171, 181 (4th Cir. 2012). "Rather, the Due Process Clause protects only those interests to which an individual has a 'legitimate claim of entitlement.'" *Id.*

The Supreme Court has held that there "is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz, 422 U.S. at 7. Similarly, "the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison." *Wolff*, 418 U.S. at 557. Accordingly, to state a procedural due process claim in this context, Plaintiff must establish that he had a vested interest, under Virginia law, that was subsequently deprived without adequate procedural protections.

As interpreted by the Virginia Supreme Court, no inmate in VDOC custody had any entitlement to a different release date or to additional sentence-reducing credit under amended Code § 53.1-202.3 prior to the effective date of those amendments: July 1, 2022. *Anderson v. Clarke*, 302 Va. 400, 408 (2023). Moreover, "it is well established that Virginia inmates do not enjoy a protected liberty interest in the rate at which they earn either Earned Sentence Credits or Good Conduct Allowances." *Sydnor v. Mahon*, No. 3:10cv780, 2012 U.S. Dist. LEXIS 23327, at *13 (E.D. Va. Feb. 23, 2012). That is, because the methods of determining and applying sentence-reducing credit remain vested in the discretion of the Virginia Department of Corrections, the statutory good conduct and earned sentencing credits scheme do not create a protected liberty interest. *Id.*; *see also Coward v. Clarke*, No. 1:19cv1351, 2020 U.S. Dist. LEXIS 103123, at *7-8 (E.D. Va. June 11, 2020); Code § 53.1-202.4 (retaining discretion of the Director of VDOC to establish the criteria under which inmates earn sentence-reducing credits).

Although Plaintiff may have had a unilateral expectation that he would be released under the amendments to Code § 53.1-202.3, he had not—at the time of the alleged deprivation—actually been awarded those additional sentence-reducing credits.  This case is distinct, then, from a circumstance where an inmate has been awarded good time credits by VDOC and those vested good time credits are later taken away—for example, as a result of a prison disciplinary hearing.  *See, e.g.*, *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974).  Under those circumstances, due process attaches and the inmate is entitled to notice and an opportunity to be heard.  But Plaintiff's position here would create a requirement for notice and an opportunity to be heard whenever VDOC, interpreting state law, elects not to award an inmate sentence-reducing credit in the first instance, as opposed to when VDOC elects to later take it away, a proposition that is not supported by existing precedent.  *See* Code § 53.1-202.3.

Rather, as this Court held in an analogous context, "until the Virginia Supreme Court conclusively determined that Plaintiff[] fell within the scope of the state law creating the entitlement—House Bill 5148—no cognizable interest had yet accrued, as there was no state law origin from which Plaintiffs could be deprived."  *Swart*, 2024 U.S. Dist. LEXIS 24180, at *29. For the reasons discussed above, the July 2023 *Prease* decision—discussing and relying upon the distinction between class 1 felonies and class 2 felonies—was not the definitive decision as to whether other, nonspecified inchoate offenses were included or excluded by the amendments to the statute.  *See Prease*, 302 Va. at 384 (specifically declining to address whether "the General Assembly intended to exempt actual violations of the enumerated statues as well as the associated inchoate crimes from receiving expanded earned sentence credits").  Rather, the controlling decision on this issue was not issued until April 2024, in the *Vazquez* opinion—by which time Puryear had been released.  *Vasquez*, 303 Va. at 104.

Accordingly, Puryear's interest in release under Code § 53.1-202.3 did not vest—if at all—until the Virginia Supreme Court conclusively determined in *Vasquez* that a conviction for any inchoate offense, not otherwise specifically listed in the statute, remains eligible for earning additional sentence-reducing credit.  Because Plaintiff had already been released from custody as of the date of that opinion, he was not deprived of any interest that may have vested at that point.

2.

Puryear's Due Process Claim fails for the additional reason that he has not sufficiently alleged what process he claims was due.  The Due Process Clause "does not protect procedure for procedure's sake." *Rector v. City and Cnty. of Denver*, 348 F.3d 935, 943-44 (10th Cir. 2003).  Thus, to state a procedural due process claim, a plaintiff must show "that the procedures employed were constitutionally inadequate." *Shirvinski v. United States Coast Guard*, 673 F.3d 308, 314 (4th Cir. 2012).  And when making this determination, it is critical that "due process does not entitle [a plaintiff] to a hearing to establish a fact that is not material under the [state] statute." *Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 7 (2003).

Here, Puryear alleges, generally, that he was denied additional sentence-reducing credits under the amended statute, and that this denial happened without an opportunity to be heard.  He admits, however, that he received notice that he was not going to be released under the statutory amendments to Code § 53.1-202.3. *See* Compl. ¶ 60.  Because Puryear admittedly received notice of the decision, the question then becomes whether any additional pre- or post-deprivation procedures were necessary.  Here, he appears to claim that he was entitled to a more fulsome opportunity to be heard.  Compl. ¶ 61.

Yet, Puryear has pointed to no relevant, disputed facts that a hearing could have established.  For example, VDOC was not considering whether Puryear had committed an

alleged disciplinary offense that would warrant revoking previously-awarded sentence-reducing credits. Rather, the question presented was purely legal: whether a new state statute provided the opportunity to earn additional sentence-reducing credits for inmates convicted of attempted robbery. The only fact relevant to this question was Puryear's crime of conviction, which is not disputed. Because Puryear has not alleged that his requested "hearing" would prove or disprove a particular fact or set of facts relevant to the inquiry at hand, he has pled, at most, that he was deprived of a process that would have been devoid of any real substance or meaning. Because the Due Process Clause does not require states to implement meaningless procedures, to establish uncontested facts, it follows that Puryear has not stated a procedural due process claim. *See Codd v. Velger*, 429 U.S. 624, 627-28 (1977) (holding that a discharged employee lacked a due process right to a hearing when he did not challenge the factual basis for the discharge, because "if the hearing mandated by the Due Process Clause is to serve any useful purpose, there must be some factual dispute").

In sum, Defendants' alleged misconduct—predetermining that Puryear was ineligible for sentence-reducing credits—did not deprive him of a protected liberty interest because, under Virginia law, he did not yet have a vested interest to deprive. Moreover, to establish a deprivation of a protected interest without adequate process of law, Puryear must identify some form of legal process that would have adequately protected this interest. Absent some factual dispute, providing a hearing or an opportunity to be heard would be to mandate procedure simply for the sake of procedure—which the Due Process Clause does not require. Accordingly, the procedural due process claim lacks merit, and should be dismissed.

3.

Even if this Court were to determine that Plaintiff has adequately pled that he had a vested liberty interest in receiving additional sentence-reducing credit as of July 1, 2022, and that this vested interest was deprived without adequate process of law, Defendants are entitled to qualified immunity on this aspect of his Fourteenth Amendment claim as well.

For the reasons discussed above, Puryear did not have a constitutional right, under the Due Process Clause, to some form of procedure when he was initially deemed ineligible to earn additional sentence-reducing credits. But even if that right existed, it was not clearly-established as of the time of the alleged misconduct: July of 2022.

As already noted, the law is not sufficiently clear that an inmate has a vested liberty interest in immediate release from custody on a conditional, good time release date, as opposed to at the expiration of an entire active sentence. *See Hurd*, 984 F.3d at 1089 ("It was not clearly established during the period of [] prolonged detention that . . . an inmate has a liberty interest in mandatory conditional release."); *see also McNeil*, 407 U.S. at 246 ("*[W]hen his sentence expired*, the State lost the power to hold him, and [] his continued detention violates his rights under the Fourteenth Amendment." (emphasis added)).

Similarly, as this Court has recently held, there is no clear law from the Fourth Circuit or the Supreme Court establishing the parameters of any right to procedural due process when a state declines to grant sentence-reducing credit (as opposed to taking away sentence-reducing credit that has already been awarded). *See Swart*, 2024 U.S. Dist. LEXIS 24180, at *34 ("Plaintiffs—even if they had an entitlement to the enhanced sentencing credits—lack a clearly established procedural due process right in this context and therefore are unable to pierce Defendants' qualified immunity from suit."); *see also Henderson v. Simms*, 223 F.3d 267, 273

18

(4th Cir. 2000) ("[W]e decline to impose liability on Appellees based upon their failure successfully to predict the course of the law.").  Nor was there any clearly-established precedent requiring Defendants to provide individualized hearings before deciding whether to apply a new state statute to a given class of inmates, particularly where there was no material fact in dispute.

Because Plaintiff did not have a clearly-established constitutional right to procedural due process before being deemed ineligible to earn additional sentence-reducing credit under amended Code § 53.1-202.3, Defendants are entitled to qualified immunity on the procedural due process claim.  *See Barrett v. Pae Gov't Servs., Inc.*, 975 F.3d 416, 429 (4th Cir. 2020) (noting that qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law" (internal quotations omitted)).

**III.    Puryear has not stated a plausible Eighth Amendment claim.**

Plaintiff alleges that he should have received additional sentence-reducing credit when the amended statute went into effect on July 1, 2022.  However, because the Eighth Amendment does not apply under these circumstances, and because, regardless, Puryear was not incarcerated past his maximum allowable sentence, the Eighth Amendment claim fails.  Further, even if the Eighth Amendment is implicated under the circumstances alleged here, Puryear has not plausibly alleged that Defendants were deliberately indifferent.

1.

As the Fourth Circuit has recognized, "[i]ncarceration beyond the termination of one's sentence *may* state a claim under the . . . eighth amendment."  *Golson*, 1990 U.S. App. LEXIS 17452, at *2-3 (emphasis added).  The Fourth Circuit has not otherwise discussed or addressed the circumstances under which overconfinement might implicate the Eighth Amendment, and the Court has recently distanced itself from this concept.  *See Campbell v. Florian*, 972 F.3d 385,

394 & n.7 (4th Cir. 2020) (noting that "claims of this nature have generally been assessed by the Supreme Court under the Fourteenth Amendment, not the Eighth," and, as to *Golson*, commenting that use of "the word 'may' was crucial," but ultimately determining that "we need not decide this question [whether an overconfinement claim is cognizable under the Eighth Amendment] today").

At least one federal court of appeals, however, has held that "overconfinement" does not implicate the Eighth Amendment because "[t]he primary purpose of [the Cruel and Unusual Punishments] clause has always been considered . . . to be directed at the method or kind of punishment imposed for the violation of criminal statutes." *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000) (quotations omitted). Where an inmate is "complaining about the *fact* of his incarceration rather than its *conditions*," the Fifth Circuit concluded that this allegation failed to state a claim under the Eighth Amendment. *Id.* (emphasis added); *see also McNeil v. Director*, 407 U.S. 245 (1972) (analyzing overconfinement claim under the Due Process Clause of the Fourteenth Amendment); *Prieto*, 780 F.3d at 251 (discussing "critical distinction" between the Eighth Amendment, which "requires a court to examine whether prison conditions impose cruel and unusual punishment," and the Due Process Clause, which "requires a court to determine whether a state has provided prisoners with adequate process").

For these reasons, where a prisoner has been validly convicted and sentenced, and later claims that he was unjustifiably held past his release date, that claim is properly analyzed under the Due Process Clause of the Fourteenth Amendment, and it is not cognizable under the Eighth Amendment. *See Jones*, 203 F.3d at 880.

2.

Even if the Eighth Amendment provided an appropriate vehicle for analyzing an overconfinement claim, Plaintiff has not plausibly alleged an Eighth Amendment violation here. The Eighth Amendment forbids the imposition of cruel and unusual punishment.  U.S. CONST. amend. VIII.  Where the alleged "punishment" is the fact of continued incarceration, without more, the Eighth Amendment would only be violated—if at all—where that continued incarceration exceeds the maximum permissible punishment imposed by the sentencing court. That is, an inmate is not "punished" within the meaning of the Eighth Amendment if he is not held longer than the maximum duration of his sentence.  *See Golson*, 1990 U.S. App. LEXIS 17452, at *2-3 ("Incarceration *beyond the termination of one's sentence* may state a claim under the due process clause and the Eighth Amendment." (emphasis added)); *Sample v. Diecks*, 885 F.2d 1099, 1108 (3d Cir. 1989) (noting that "confinement in a prison pursuant to a conviction *but beyond the term of a sentence*" implicates the Eighth Amendment (emphasis added)); *accord Moore v. Tartler*, 986 F.2d 692, 686 (3d Cir. 1993) (same); *Carenito v. Wrenn*, No. 09-cv-021, 2009 U.S. Dist. LEXIS 19813, at *5 (D.N.H. Feb. 27, 2009) (analyzing petition for constitutional violation where the inmate claimed "that he is being incarcerated past the maximum expiration date of his sentence").

Under Virginia law, "[t]he term of confinement in a local or state correctional facility for the commission of a crime shall commence and be computed from the date of the final judgment."  Code § 53.1-186.  And by statute, Virginia law requires that offenders receive sentence-reducing credit for time spent awaiting trial on the charges that actually resulted in the incarceration. Code § 53.1-187; *see also Wallace v. Jarvis*, 726 F. Supp. 2d 642, 646-47 (W.D. Va. 2010).  Beyond that, however, any sentence-reducing credits are applied at the discretion of

the Virginia Department of Corrections.  *See* Code § 53.1-189; Code § 53.1-202.4; *see also*
*Commonwealth v. Bertini*, 68 Va. Cir. 255, 259 (Fairfax Cnty Cir. Ct. July 15, 2005) ("As the
executive branch bears the responsibility for the proper execution of a sentence imposed on an
individual, it is entirely reasonable for the personnel of that governmental branch to be the initial
arbiter of the existence and scope of all credits to be applied to the sentence."); *accord Miska v.
Bartley*, No. 5:09cv00092, 2010 U.S. Dist. LEXIS 123950 at *15 (W.D. Va. Nov. 22, 2010).

Thus, where an inmate, validly convicted and sentenced, claims that he should have
received additional sentence-reducing credit, but ***was not held past the total active sentence
imposed upon him for his crime(s),*** the Eighth Amendment is not implicated, for that inmate has
not been "punished" within the meaning of the cruel and unusual punishments clause.  Rather, to
state any potentially cognizable claim for overconfinement under 42 U.S.C. § 1983—as opposed
to a habeas petition predicated on an alleged sentence miscalculation—a plaintiff must plausibly
allege that he was held past his maximum allowable release date.  Puryear has not done so here.
Based on the clear allegations of the complaint, Puryear served less total active time than the
sentence imposed upon him; his quarrel is with whether he should have been awarded additional
sentence-reducing credit so as to serve even less.

Because Plaintiff was not incarcerated "beyond the termination" of his maximum
allowable sentence, he has not stated a viable Eighth Amendment claim.  *Golson*, 1990 U.S.
App. LEXIS 17452, at *2-3.

### 3.

Puryear's Eighth Amendment claim additionally fails because he has not plausibly
alleged deliberate indifference.  Puryear does not allege that Defendants intentionally elected to
confine him and others similarly-situated beyond their estimated release date.  He alleges, rather,

that Defendants—faced with a new legislative enactment—failed to request an official opinion interpreting certain provisions in that statute. Compl. ¶¶ 40-42; Compl. ¶ 100 ("Defendants . . . did not seek clarification on the statutory text concerning robbery or carjacking, although they sought clarification of other parts of the statute."). This allegation falls far short of the criminal recklessness needed to establish subjective indifference.

An Eighth Amendment claim must satisfy both "objective" and "subjective" requirements. *Florian*, 972 F.3d at 393; *see also Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the "objective" prong, the alleged deprivation must be "objectively, sufficiently serious," which in turn requires that it be "extreme," posing "a serious or significant physical or emotional injury" or "a substantial risk of serious harm resulting from exposure to the challenged conditions." *Porter v. Clarke*, 923 F.3d 348, 355 (4th Cir. 2019). And to satisfy the "subjective" prong, the plaintiff also must show that the defendant "possessed a sufficiently culpable state of mind," which requires that the state officials were "deliberately indifferent" to the harm. *Florian*, 972 F.3d at 394 (citing *Farmer*, 511 U.S. at 834).

As the Fourth Circuit recently explained in an analogous context, the subjective prong of the deliberate indifference analysis requires as showing "that the defendant possessed a 'sufficiently culpable state of mind.'" *Campbell*, 972 F.3d at 394 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "'[O]bduracy and wantonness, not inadvertence or error in good faith, [] characterize the conduct prohibited by the Cruel and Unusual Punishments clause.'" *Id.* (quoting *Wilson*, 501 U.S. at 299 (alterations in original)). Deliberate indifference, generally, "is a form of *mens rea* (or 'guilty mind') equivalent to criminal-law recklessness." *Id.* at 395. This requires a showing that the prison official both "subjectively recognized a risk of substantial harm" and "subjectively recognized that his actions were inappropriate in light of that risk." *Id.*

23

(internal quotations omitted).  "Thus, '[d]eliberate indifference is a very high standard,' and 'a showing of mere negligence will not meet it.'"  *Id.* (quoting *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999)).

The allegations as to these Defendants is insufficient to constitute criminal-law recklessness.  As best, the complaint alleges that Defendants to failed immediately recognize that the reasoning in *Prease* should likely be applied beyond the limited circumstances presented by that case.  But that is not enough, standing alone, to establish subjective indifference as to Puryear and other inmates convicted of attempted robbery or carjacking, conspiracy to commit robbery or carjacking, or solicitation to commit robbery or carjacking.

As the Fourth Circuit has reasoned, "[a]n incorrect legal opinion often occurs without some negligent (much less reckless) act or omission," particularly considering that, "[i]n our adversarial legal system, roughly 50% of litigants lose—and thus have pressed an incorrect legal opinion."  *Campbell*, 972 F.3d at 396.  The Fourth Circuit has therefore expressly declined to "infer criminal recklessness from a legal conclusion later deemed unreasonable."  *Id.* at 397.  This is especially true in light of the fact that "legislatures rarely draft statutes as clearly as courts would like," and "statutory interpretation is often subject to some uncertainty."  *Id.* at 398.

Considering these circumstances, the complaint fails to plausibly allege that Defendants—erring in the interpretation and application of a new statute—acted with a "guilty mind" equating to criminal recklessness.  "[L]egal error alone is not deliberate indifference."  *Id.* at 399.  As this Court held in analogous circumstances, courts should not apply an "adverse inference" against state officials who interpret a statute in a manner that is ultimately determined to be incorrect.  *Swart*, 2024 U.S. Dist. LEXIS 24180, at *26.  As discussed above, even though, in *Prease*, the Virginia Supreme Court interpreted amended Code § 53.1-202.3 and held that

convictions for attempted aggravated murder did not disqualify an inmate from receiving enhanced sentence-reducing credit (the class 1 felony vs. class 2 felony distinction), that opinion explicitly declined to address whether other inchoate offenses might be encompassed by the scope of the statute.  Rather, the overarching state-law question—whether Code § 53.1-202.3 also disqualified convictions for inchoate offenses not otherwise specifically enumerated in the statute—was not definitively addressed until *Vasquez v. Dotson*, 303 Va. 97 (2024), decided in April 2024, long after Plaintiff and others similarly-situated had been released from custody. Compl. ¶ 16.

Because the alleged conduct of these Defendants does not constitute criminal recklessness, any Eighth Amendment claim against them fails as a matter of law.  *See Swart*, 2024 U.S. Dist. LEXIS 24180, at *26-27 (holding that similar claims against Defendant Clarke were insufficient under the subjective prong of the Eighth Amendment deliberate-indifference analysis).

4.

For the reasons discussed above, Puryear has not alleged facts from which it could be determined that Defendants violated the Eighth Amendment.  But even if the allegations against Defendants were to survive initial scrutiny under the deliberate-indifference analysis, a reasonable corrections official, charged with knowledge of established law, would not have known that continuing to hold an individual in custody, past a discretionary release date but prior to the expiration of their maximum allowable sentence, violated the Eighth Amendment. Defendants are therefore entitled to qualified immunity.

As the Second Circuit has recently held, the law is not sufficiently clear that an inmate has any Eighth Amendment right to immediate release from custody on a conditional, good time

25

release date, as opposed to at the expiration of their entire active sentence. Specifically, in *Hurd v. Fredenburgh*, 984 F.3d 1075 (2d Cir. 2021), an inmate was held past a mandatory statutory release date that should have been calculated by awarding him credit for time spent awaiting trial. However, he was not held past his maximum-allowable release date. Under those circumstances, the Second Circuit held that "[i]t was not clearly established during the period of [] prolonged detention that an inmate suffers harm of a constitutional magnitude under the Eighth Amendment when they are imprisoned past their mandatory conditional release date." *Id.* at 1089. Specifically, the Court noted that, "[b]efore today, we have never held that an inmate suffers a constitutional harm under the Eighth Amendment when they are detained beyond a statutorily mandated release date, even if that mandatory release date precedes the expiration of the maximum term of their sentence." *Id.* at 1090. Although "[i]t was clearly established that [the state] could not detain [an inmate] past the expiration of his maximum sentence, [] it was not clearly established that once [the inmate's] conditional release date was approved, continued detention beyond that date qualifies as a constitutional harm for Eighth Amendment purposes." *Id.*

Similarly, there is no clear law from the Fourth Circuit or the Supreme Court establishing the parameters of this asserted Eighth Amendment right. Indeed, the Fourth Circuit has recently expressed doubt as to whether the Eighth Amendment applies in this context at all. *See Campbell v. Florian*, 972 F.3d 385, 394 & n.7 (4th Cir. 2020). Because Plaintiff did not have a clearly established constitutional right under the Eighth Amendment to be released from custody on a conditional, good time release date—as opposed to at the expiration of his maximum allowable sentence—Defendants are entitled to qualified immunity on this claim.

Also of note, neither Defendant was sufficiently on notice that the alleged misconduct might transgress constitutional boundaries. Defendants are alleged to have mis-interpreted a brand-new statute when determining who was eligible for extra sentence-reducing credits under that law. Until the newly-adopted statute was interpreted, in *Vasquez*, by the Virginia state courts, Defendants were operating in an inherently gray area—and that is precisely where qualified immunity applies. *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992) (noting that qualified immunity protects officials from liability for "bad guesses in gray areas").

Because Plaintiff did not have a clearly-established Eighth Amendment right to be released from custody on a conditional, good-time release date—as opposed to at the expiration of their maximum term of sentence—Defendants are entitled to qualified immunity on this claim.

## IV. The False Imprisonment Claim Is Barred by the One-Year Statute of Limitations and Does Not State a Claim.

In Count IV, Puryear brings a state-law claim for false imprisonment, alleging that Defendants deprived him of his liberty without sufficient justification or excuse. Because this claim is subject to the one-year statute of limitations in Virginia Code § 8.01-243.2, it is untimely on its face and should be summarily dismissed. Moreover, because VDOC possessed the authority—in the form of sentencing orders imposing over 18 years of incarceration—to imprison Puryear for a specified period of time, any unintentional miscalculation of his release date does not state a claim for false imprisonment under Virginia law.

Under Virginia Code § 8.01-243.2, inmates are required to file personal actions relating to their conditions of confinement "within one year after [the] cause of action accrues," or "within six months after all administrative remedies are exhausted," whichever is later. As the Virginia Supreme Court has explained, "[f]or the one-year provision in Code § 8.01-243.2 to apply, the plaintiff must have been 'confined' at the time the cause action accrued, and the cause

27

of action must relate to plaintiff's 'conditions of confinement.'" *Bing v. Haywood*, 283 Va. 381, 385 (2012).

Both prerequisites are fulfilled here. Puryear alleges that he was held past the date which he should otherwise have been released from custody. He was therefore "confined" at the time his cause of action accrued. *See id.; see also Lucas v. Woody*, 287 Va. 354, 361 (2014) (holding that the one-year statute of limitations applies even if the claimant has been released from custody by the time he files suit). And his claim—false imprisonment—centers upon the very fact of that confinement. Accordingly, the statute of limitations in Code § 8.01-243.2 applies to this state-law tort claim, and to be timely filed, this suit must have been filed within one year after that the cause of action accrued.

Puryear's cause of action accrued as of the date that he allegedly should have been released from custody—which, according to him, was "within 60 days of July 1, 2022." Compl. ¶ 55; *see also Jordan v. Shands*, 255 Va. 492, 498 (1998) (under Virginia law, "when an injury is sustained in consequence of the wrongful or negligent act of another and the law affords a remedy, the statute of limitations immediately attaches."). Even affording Puryear the latest possible accrual date—on or around September 1, 2022—this claim, filed on June 28, 2024, is untimely under Code § 8.01-243.2.

Even setting aside the question of timeliness, Puryear's claim fails as a matter of Virginia law. As the Virginia Supreme Court has explained, "a person cannot be falsely imprisoned if her liberty was restrained pursuant to a lawful arrest." *Dill v. Kroger Ltd.*, 300 Va. 99, 114 (2021). "The gist of [false imprisonment] is the illegal detention of the person, without lawful process, or the unlawful execution of lawful process." *Id.* (internal quotations omitted). "Accordingly, a plaintiff cannot maintain an action for false imprisonment because of an arrest pursuant to a

regular and valid warrant; that is, if the imprisonment results from her being taken in due course to the magistrate and there admitted to bail or imprisoned regularly upon due order of commitment from him." *Id.* (internal quotations omitted).

Here, it is undisputed that Puryear was arrested, convicted, and sentenced to an active period of incarceration within VDOC. Puryear entered VDOC custody in 2011, ordered to serve active sentences totaling 18 years, 8 months and 26 days. *See* Ex. B (attaching, collectively, Plaintiff's sentencing orders). Those orders provided VDOC with the authority to hold Puryear in custody for a corresponding period of 18 years, 8 months, and 26 days. VDOC nonetheless ultimately awarded Puryear additional sentence-reducing credit, resulting in an earlier release. But that does not mean that holding him past an anticipated release date—but releasing him well before his maximum allowable release date—constituted the intentional tort of false imprisonment.

Because Puryear's incarceration was "a consequence of proper legal process," *id.*, failure to release him from custody prior to the expiration of his entire active sentence of incarceration does not, under Virginia law, state a claim of false imprisonment. Accordingly, Count IV should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant their motion to dismiss and enter any other such further relief as may seem just.


                            Respectfully submitted,

                            CHADWICK DOTSON and HAROLD W.
                            CLARKE, Defendants.

By:    _____/s/_____
       Margaret Hoehl O'Shea, SAAG, VSB #66611
       Attorney for named Defendants
       Office of the Attorney General
       Criminal Justice & Public Safety Division
       202 North 9th Street
       Richmond, Virginia 23219
       (804) 225-2206
       (804) 786-4239 (Fax)
       Email:  moshea@oag.state.va.us

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 6th day of August, 2024, I electronically filed the foregoing

Memorandum in Support of Motion to Dismiss with the Clerk of the Court using the CM/ECF

system which will send notification of such filing to all filing users, And I hereby certify that I

have mailed by United States Postal Service the documents to the following non-CM/ECF

participants:  N/A

_____/s/_____
Margaret Hoehl O'Shea, SAAG, VSB #66611
Attorney for named Defendants
Criminal Justice & Public Safety Division
Office of the Attorney General
202 North 9th Street
Richmond, Virginia 23219
(804) 225-2206
(804) 786-4239 (Fax)
Email:  moshea@oag.state.va.us
