**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

LESLIE PURYEAR, *on behalf of himself and all those similarly situated,*

        Plaintiff,

v.

CHADWICK DOTSON, *in his individual capacity,*

HAROLD CLARKE, *in his individual capacity,*

        Defendants.

Civil Action No. 3:24-cv-00479-REP

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

In 2020, the Virginia legislature amended the state's sentence credit statute to increase the rate at which people in Virginia Department of Corrections ("VDOC") custody earn sentence credits for good conduct. *See* Va. Code Ann. §§ 53.1-202.2, *et seq.* (West 2024). The amendments exclude people with completed robbery and carjacking convictions from increased credits, but they do not exclude people with convictions for related inchoate offenses. Plaintiff Leslie Puryear and the members of the putative class (collectively, "class members"),[1] who were serving sentences for inchoate crimes related to robbery and carjacking, were entitled to credits at the increased rate.

Before the law went into effect in 2022, VDOC, then led by Defendant Harold Clarke, contended that provisions unrelated to the class members, concerning "Class 1 felon[ies]" and "any violation of" certain criminal statutes, were ambiguous as to whether they encompassed only completed offenses or also related inchoate crimes. Defendants sought and received attorney general opinions and litigated cases in front of the Virginia Supreme Court about this language, but the language has no bearing on class members' claims. Defendants never sought or received an opinion or litigated a case about the statutory provision that applies to the class, § 53.1-202.3(A)(9), because it is not ambiguous.

Nevertheless, Defendants withheld earned sentence credits ("ESCs") from class members with convictions for inchoate versions of offenses related to § 53.1-202.3(A)(9)—until Mr. Puryear filed a habeas corpus petition in November 2023. Then, VDOC reversed course, retroactively gave class members their ESCs, and released those who had become eligible. This is the quintessential arbitrary deprivation that the Fourteenth and Eighth Amendments prohibit.

---

[1] Mr. Puryear brings this case on behalf of himself and a putative class of people convicted of inchoate versions of crimes related to robbery and carjacking, who were released based on sentence credit calculations on or after November 13, 2023, but who should have been released before that, as early as July 1, 2022. *See* Dkt. 1 ¶¶ 2, 72.

1

## FACTUAL AND PROCEDURAL BACKGROUND

Mr. Puryear was convicted in March of 2011 and sentenced to 18 years, 8 months, and 26 days in prison. *See* Dkt. 1 ¶ 51. At the time he was sentenced, his projected release date was April 21, 2025. *Id.* In 1994, the Virginia General Assembly had established an ESC program. *Id.* ¶¶ 26–28. Throughout his time in prison, Mr. Puryear's conduct entitled him to what was then the maximum number of ESCs, 4.5 credits for every 30 days in prison. *Id.* ¶ 53.

### A.  The Earned Sentence Credit Amendments

In 2020, while Mr. Puryear was serving his sentence, the Virginia General Assembly amended the earned sentence credit statute, making everyone in VDOC custody eligible for up to 15 credits for every 30 days served, except for people convicted of a list of enumerated offenses, who can earn only 4.5 credits for every 30 days. *Id.* ¶¶ 4–5, 29, 36. The amended statute is mandatory; VDOC cannot deny credits to people entitled to them. *Id.* ¶¶ 7, 35. The amended statute went into effect on July 1, 2022 and applied retroactively. *Id.* ¶ 37.

### B.  Defendants' Response to Ambiguity in Unrelated Statutory Provisions

The excluded, enumerated offenses are listed in Va. Code § 53.1-202.3(A)(1)–(17). *See* Ex. A (Va. Code Ann. § 53.1-202.3 (effective July 1, 2022)). One provision excludes convictions for "[a] Class 1 felony." *Id.* § 53.1-202.3(A)(1). Several others exclude "any violation of," "any felony violation of," or "any felony offense" of enumerated statutes (collectively, "'any violation of' language"). *Id.* § 53.1-202.3(A)(3)–(4), (7)–(8), (11)–(16). Critically, the robbery and carjacking provision, § 53.1-202.3(A)(9), *does not include* this "any violation of" language.[2]

Before the statute went into effect, VDOC, then headed by Defendant Clarke, contended

---

[2] In Exhibit A, the provisions Defendants identified as ambiguous and sought clarification on are highlighted in blue. The provision that applies to the class members is highlighted in yellow.

that some provisions were ambiguous, and it sought an opinion from Attorney General Mark Herring on their meaning. Specifically, VDOC asked about (1) the "any felony violation" language, (2) offenses related to aggravated murder, (3) § 53.1-202.3(A)(10) (concerning sexual assault), and (4) § 53.1-202.3(A)(17) (concerning second and subsequent offenses). *See* Ex. B (Dec. 21, 2021 Letter from Herring to Clarke).[3] No question concerned § 53.1-202.3(A)(9), the provision that governs the class members. VDOC later asked Attorney General Miyares the same set of questions, again asking nothing about § 53.1-202.3(A)(9). *See* Dkt. 18-1. Although Defendants *twice* identified ambiguous statutory provisions and sought clarification of them, they never asked about the unambiguous provision governing the class members. *See* Dkt. 1 ¶ 42.

    C.  Virginia Supreme Court Litigation Concerning Ambiguous Statutory Provisions

Defendants also twice litigated perceived ambiguities in § 53.1-202.3 before the Virginia Supreme Court. Neither of those cases involved § 53.1-202.3(A)(9). And every time the Virginia Supreme Court opined on the ESC statute, it concluded that inchoate versions of the enumerated offenses *were* eligible for expanded credits. First, in *Prease v. Clarke*, the Court held that inchoate offenses related to aggravated murder were eligible for expanded credits, although aggravated murder was not, 888 S.E.2d 758, 762–63 (Va. 2023). Next, in *Vasquez v. Dotson*, the Court held that the "any violation of" language in § 53.1-202.3(A)(2) does not encompass inchoate offenses and thus that people convicted of inchoate versions of the offenses in that provision are entitled to expanded credits, 899 S.E.2d 631, 634-35 (Va. 2024). Because § 53.1-202.3(A)(9) does not

---

[3] While documents outside the pleadings generally should not be considered at the motion to dismiss stage, documents that are "integral to and explicitly relied on in the complaint," *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999), can be considered without converting the motion to a motion for summary judgment. *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015); Dkt. 1 ¶ 40 (discussing Herring's letter). For the same reason, Attorney General Miyares's letter, which Defendants attach to their motion, does not convert the present motion into a motion for summary judgment. *See* Dkt. 1 ¶ 41 (discussing Miyares's letter).

3

include "any violation of" language, *Vasquez* does not affect the class members.

D. <u>Defendants' Shifting and Arbitrary Treatment of Mr. Puryear and the Class Members</u>

Before the statute went into effect, Defendants told Mr. Puryear and members of the class that they would be released, and it began preparing them for release. *See* Dkt. 1 ¶¶ 57–59. Then, after the statute went into effect, in the summer of 2022, Defendants reversed course and told the class members, including Mr. Puryear, that they would not be released. *Id.* ¶¶ 60–63. In the fall of 2023, Mr. Puryear filed a motion for habeas corpus, and before the Virginia Supreme Court ruled on that motion, Defendants again reversed course and retroactively granted Mr. Puryear and the class members their credits in November of 2023, *id.* ¶¶ 64–68. At the time, they attributed this decision to *Prease*, which had been decided several months earlier. *Id.* at Ex. A, p. 3.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). As this Court has explained, "[c]ourts should assume the veracity of all well-pleaded allegations . . . and should deny a motion to dismiss where those well-pleaded allegations state a plausible claim for relief." *Reardon v. Herring*, 201 F. Supp. 3d 782, 784 (E.D. Va. 2016). "A claim is 'plausible' when the plaintiff pleads facts sufficient to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Id.* (citing *Twombly*, 550 U.S. at 555).

## ARGUMENT

**I.    The complaint states a claim that Defendants violated class members' substantive due process rights, and Defendants are not entitled to qualified immunity.**

The class members had a right to release on the date their lawful confinement ended, as calculated including the statutorily mandated sentence credits. That right to credits vested when

4

the unambiguous statutory provisions that apply to class members went into effect. In spite of class members' right to release, Defendants, acting with deliberate indifference, over-detained them for months, and in some cases, more than a year. The right to release was clearly established, and Defendants are not entitled to qualified immunity.

A. <u>The class members had a right to timely release, which Defendants violated.</u>

   1. *Incarcerated people have a right to release at the end of their lawful imprisonment, as calculated with mandatory sentence credits.*

"The touchstone of due process is protection of the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). Substantive due process protects against "the exercise of power without any reasonable justification in the service of a legitimate governmental objective." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). "The first step in substantive due process analysis is to identify the constitutional right at stake," *Hurd v. Fredenburgh*, 984 F.3d 1075, 1088 (2d Cir. 2021) (citation omitted), and then demonstrate that defendants acted with sufficient culpability in causing a deprivation of that right, *id.*

The right at issue here is the liberty interest in not being confined past the termination of one's sentence of incarceration. "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary government action . . . commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (citations omitted). There is no dispute that there is a substantive due process right to be free from incarceration past the lawful termination of one's sentence. *Id.* at 80; *see also Wilson v. Johnson*, 535 F.3d 262, 264–65 (4th Cir. 2008); *Swart v. Miyares*, No. 3:23cv753, 2024 WL 466797, at *9 (E.D. Va. Jan. 31, 2024).

Defendants argue an incarcerated person's right to release attaches not at the expiration of a sentence as calculated with mandatory credits, but only at the date as originally calculated in the

5

sentencing order. According to Defendants, Mr. Puryear's lawful incarceration thus ended on the date in his original sentencing order (April 21, 2025), and not on that date as modified by his earned credits (July 1, 2022). This position has been rejected by every court that has considered it.

The United States Supreme Court, the Fourth Circuit, and the Virginia Supreme Court expressly recognize a liberty interest in sentence credits. Where "the State ha[s] created the right to good time . . . the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' . . . ." *Wolff*, 418 U.S. at 557. *See also Lennear v. Wilson*, 937 F.3d 257, 262, 268 (4th Cir. 2019) (the "liberty interest" in "good time credits" requires due process protection); *Anderson v. Clarke*, 893 S.E.2d 379, 387 (Va. 2023) ("[A]n inmate may have a cognizable due process interest in a state's earned sentence credit program.") (citing *Wolff*). The liberty interest in sentence credits is the right to release when the credits mandate it, not on the date contemplated in the original sentence, as courts recognize. *See Hurd*, 984 F.3d at 1088 ("Conditional release under New York law . . . is a state-created right of mandatory release from prison . . . ."); *Swart*, 2024 WL 466797, at \*9 ("[G]iven that the credits set forth in House Bill 5148 [amending § 53.1-202.2, *et seq.*] apply mandatorily to all inmates within its purview, the deprivation of such credits once vested would amount to over-detention that could violate the Fourteenth Amendment's due process clause.").

Defendants suggest that even if a mandatory sentence credit system creates a liberty interest, Virginia's sentence credit scheme is not mandatory, *see* Dkt. 18 at 14, but that is wrong. Virginia's sentence credit statute provides that "[e]very person who is convicted of a felony offense . . . who is sentenced to serve a term of incarceration in a state or local correctional facility *shall be eligible* to earn sentence credits . . ." Va. Code Ann. § 53.1-202.2(A) (West 2024) (emphasis added). The amended ESC statute made mandatory provisions that were previously discretionary

6

concerning entitlement to credits, classification levels, and the rate of credit accrual. *Compare* Va. Code Ann. § 53.1-202.3 (effective July 1, 2008 to June 30, 2022) ("A maximum of four and one-half sentence credits *may* be earned for each 30 days served.") (emphasis added), *with* Va. Code Ann. § 53.1-202.3(B) (effective July 1, 2022) ("[E]arned sentence credits *shall be awarded* and calculated using the following four-level classification system.") (emphasis added). *See also id.* § 53.1-202.3(B)(1) ("For persons receiving Level I sentence credits, 15 days *shall be* deducted from the person's sentence for every 30 days served.") (emphasis added); *id.* § 53.1-202.3(B)(1) ("Level I sentence credits *shall be awarded* to persons who participate in and cooperate with all programs" and who comply with statutory limits on infractions) (emphasis added). The Virginia Supreme Court and the Eastern District of Virginia have recognized that Virginia's amended sentence credit statute is mandatory. *See, e.g.*, *Prease*, 888 S.E.2d at 759–60 (contrasting prior discretionary scheme with amended mandatory scheme); *Swart*, 2024 WL 466797, at *9.[4]

Where the legislature establishes a mandatory sentence credit scheme, it has the same force, and creates the same liberty interest, as the statute on which a person's original sentence was based. *See Hurd*, 984 F.3d at 1085 ("New York chose to make conditional release mandatory upon the approval of good-time credit," so plaintiff's "conditional release date"—his initial sentence as reduced by the good-time credit—"became the operative date on which his maximum term of

---

[4] Defendants retain some discretion under the amended statute, *see* Va. Code Ann. § 53.1-202.4 (West 2024), but it is circumscribed by other provisions, *see id.* § 53.1-202.3(B). The cases Defendants cite, *Sydnor v. Mahon*, No. 3:10CV780, 2012 WL 604039 (E.D. Va. Feb. 23, 2012), and *Coward v. Clarke*, No. 1:19-cv-1351, 2020 WL 3104529 (E.D. Va. June 11, 2020), concern VDOC's discretion to determine conduct levels, which is not at issue here. In both cases, courts found that under the *prior* statute's discretionary scheme, plaintiffs challenging the impact of prison discipline on their conduct levels did not have a right to a particular level. *See Sydnor*, 2012 WL 604039, at *4; *Coward*, 2020 WL 3104529, at *3–4. This assessment would likely be different under the new statute, *see Prease*, 888 S.E.2d at 759–60, but in any event, is not at issue here: Defendants do not dispute that the class members had maintained classification levels that earned them sufficient credits to be released if they were not excluded under § 53.1-202.3(A).

imprisonment expired."). The legislature creates both; both operate mandatorily. There is no constitutional distinction between the original sentence and the mandatory credit reductions.

No case on which Defendants rely is to the contrary. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1 (1979), actually affirms the distinction between mandatory and discretionary credit regimes. The Court there found no protected liberty interest in a *discretionary* parole scheme and explicitly said it was not considering Nebraska's mandatory credit program, which, like Virginia's, entitled an incarcerated person to release "when an inmate has served his maximum term, less good-time credits." *Id.* at 4. *Golson v. Department of Corrections,* 914 F.2d 1491 (4th Cir. 1990) (unpublished), does not address what constitutes the termination of a sentence, the key question here, at all. And *Paternoster-Cozart v. Clarke*, No. 2:13cv539, 2014 WL 3811900 (E.D. Va. Aug. 1, 2014), merely assessed a sentencing court's consideration of drug court confinement in setting a sentence; it is utterly unrelated to the instant matter.

> 2. *Class members' rights to expanded credits vested when the unambiguous provisions of the mandatory scheme went into effect; no further action from the Virginia Supreme Court was needed.*

Class members' rights to credits vested when the unambiguous and mandatory statute granting them expanded credits went into effect on July 1, 2022. Defendants' argument that a liberty interest is created not by the legislature's passing of an unambiguous statutory right, but only by the state supreme court affirming that right, is anathema to the Fourteenth Amendment and unsupported by any case law. In every case where a court has found a due process right to release based on the operation of mandatory sentence credits, that right has come solely from the legislature, not from an affirmation of statutory meaning by a state supreme court. *See, e.g.*, *Hurd*, 984 F.3d at 1085; *Wolff*, 418 U.S. at 558; *Douthit v. Jones*, 619 F.2d 527, 535 (5th Cir. 1980).

The only support Defendants offer for the proposition that a due process right can be

created solely by an act of the state supreme court, rather than the legislature, is *Swart v. Miyares.* But *Swart* does not support this view. *Swart* involves an over-detention claim brought by plaintiffs with attempted murder convictions, a subject of Attorney General Miyares's opinion. The court found that VDOC was reasonable in relying on that opinion, and so until the Virginia Supreme Court held otherwise in *Prease*, that opinion operated to deny expanded credits to people with attempted murder convictions. 2024 WL 466797 at *9. The class members' claims here were not addressed or controlled by Attorney General Miyares's opinion. *See supra* at 2-3, and so they were controlled by the statute.

Defendants say that *Prease* specifically declined to address class members' claims, which did not vest until *Vasquez*, but both parts of this assertion are wrong—neither *Prease* nor *Vasquez* addressed the class members' claims. The *Prease* Court did not specifically decline to consider whether inchoate violations related to any enumerated offense were excluded from receiving credits, Dkt. 18 at 6, because that broader issue was not in front of it. Instead, the *Prease* Court declined to consider only the Commonwealth's narrower argument concerning the "any violation of" language in § 53.1-202.3(A)(2), because it had resolved the case based on the "Class 1 felony" language in § 53.1-202.3(A)(1). 888 S.E.2d at 762. Neither the "Class 1 felony" nor the "any violation of" language appears in § 53.1-202.3(A)(9). As such, *Prease* neither addressed nor declined to address inchoate offenses related to § 53.1-202.3(A)(9). *Vasquez* also did not address the provision governing class members; it concerned only the "any violation of" language. 899 S.E.2d at 104.[5] Defendants' contention that class members' rights vested when *Vasquez* was decided thus makes no sense: There is no reason a Supreme Court decision unrelated to class

---

[5] If anything, *Vasquez*'s holding that "any violation of" a completed offense does not encompass inchoate offenses supports the class members' argument that the exclusion of "robbery and carjacking" from enhanced credits does not implicitly exclude inchoate versions of those offenses.

members' offenses could have been necessary to vest them with a right. Instead, the law that controlled the class members' right to credits was established by statute, and that right vested when the clear statutory text went into effect.

### 3. *Defendants' refusal to provide credits was deliberately indifferent.*

A defendant acts with sufficient culpability to violate substantive due process in the over-detention context if they are deliberately indifferent, *see Lewis*, 523 U.S. at 849–51, that is, where he "(1) . . . had 'subjective knowledge of a risk of serious harm, consisting of continued detention when the plaintiff was entitled to be released'; (2) . . . 'disregarded that risk'; and (3) the disregard was by 'conduct that is more than mere negligence.'" *West v. Prince George's Cnty.*, No. 21-0863, 2022 WL 125936, at *5 (D. Md. Jan. 13, 2022) (citation omitted).[6]

Deliberate indifference is a "fact-intensive" inquiry. *Bone v. Univ. of N. Carolina Health Care Sys.*, No. 1:18CV994, 2022 WL 138644, at *62 (M.D.N.C. Jan. 14, 2022). As such, it cannot be resolved at the motion to dismiss stage. *See, e.g., Davis v. Hall*, 375 F.3d 703, 719 (8th Cir. 2004) ("[W]hether the defendants' conduct constituted deliberate indifference is a classic issue for the fact finder.") (quoting *Armstrong*, 152 F.3d at 577).

The complaint sufficiently alleges that Defendants acted with deliberate indifference rather than a good-faith misunderstanding. The complaint alleges that "VADOC detained people even though the statutory language is clear, and even though VADOC's conduct demonstrates that it

---

[6] As described in this section and in section III, *infra*, detention beyond legal authorization violates both the Fourteenth Amendment right to be free from arbitrary deprivations of liberty and the Eighth Amendment right to be free from cruel and unusual punishment. *See Golson*, 914 F.2d at *1. The standards for deliberate indifference under these two constitutional provisions may differ, with a less culpable mental state necessary for deliberate indifference to a plaintiff's Fourteenth Amendment rights, *see Short v. Hartman*, 87 F.4th 593, 605 (4th Cir. 2023); *Armstrong v. Squadrito*, 152 F.3d 564, 577 (7th Cir. 1998), but the Court need not decide that at this juncture, as the complaint alleges sufficient facts to meet either standard.

*knew* the statutory language does not exclude people convicted of inchoate offenses related to robbery and carjacking from earning enhanced ESCs." Dkt. 1 ¶ 39. Indeed, although Defendants twice sought clarification from the attorney general about ambiguous statutory language, they never asked about language concerning the class members. *Id.* ¶¶ 40–42. That is, Defendants knew of the risk of over-detention and disregarded that risk, detaining class members anyway. And Defendants acted with more than mere negligence. They initially told Mr. Puryear and other class members they would be released, then took steps to block that release. *Id.* ¶¶ 58–60. Despite having ample time to deliberate and knowing of class members' statutory entitlement to release, Defendants actively worked to detain them without justification. Defendants have still never provided any explanation as to why the provision concerning the class members was ambiguous.

Then, when Mr. Puryear eventually filed a habeas corpus petition, VDOC, knowing Mr. Puryear had been entitled to ESCs all along, "reversed course," retroactively granting ESCs to and releasing Mr. Puryear and those similarly situated without any court decision directing it to do so. *Id.* ¶¶ 66–67. Defendants have offered shifting explanations for this reversal that undermine their credibility and suggest they in fact acted with deliberate indifference. At the time, Defendants said they released class members because of *Prease*. *See* Dkt. 1 ¶ 67; Dkt. 1-1. This explanation was not credible then, as several months had passed since *Prease* with no effort to release the class members, and it is even less credible now, in light of Defendants' assertion that *Prease* did not control the class members' claims, Dkt. 18 at 6. *See, e.g.*, *Carrin v. Smiledge*, No. 4:21CV486, 2024 WL 2797051, at *2 (N.D. Fla. May 31, 2024) (summary judgment on deliberate indifference inappropriate where defendant's "explanation [for his conduct] shifted").

Defendants' unjustified refusal to apply the statute to Mr. Puryear and the class members, which resulted in their unlawful incarceration for months or years, is exactly the kind of arbitrary

"conduct intended to injure . . . unjustifiable by any government interest," that amounts to deliberate indifference. *Lewis*, 523 U.S. at 849.

      B.  <u>Defendants are not entitled to qualified immunity.</u>

Officials are entitled to qualified immunity where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The "key inquiry" for qualified immunity "is not whether a court has considered identical factual circumstances and held that an officer's conduct violated particular constitutional rights, but whether officers within our jurisdiction have been provided fair warning, with sufficient specificity, that their actions would qualify as a deprivation of an individual's rights." *Hicks v. Ferreyra*, 64 F.4th 156, 171 (4th Cir. 2023) (cleaned up). "[T]he defendant bears the burden of proof" in showing "entitlement to qualified immunity." *Henry v. Purnell*, 501 F.3d 374, 378 (4th Cir. 2007).

The qualified immunity analysis thus turns on two questions: (1) was it clearly established that people who are incarcerated have a right to release on their release date as calculated with earned sentence credits to which they are entitled, as opposed to on the release date as calculated by their original sentencing order; and (2) if so, was it clearly established that Mr. Puryear and class members were entitled to the earned sentence credits here? Because the complaint adequately alleges that the answer to both questions is yes, Defendants are not entitled to qualified immunity.

          1.  *It is clearly established that incarcerated people have a right to release on their release dates as calculated with sentence credits to which they are entitled, regardless of the length of their initial sentences.*

Contrary to Defendants' assertion, it is clear that the right to release attaches at the conclusion of the sentence as reduced by any mandatory sentence credits. As described in section I.A, *supra*, the United States Supreme Court and the Fourth Circuit have long recognized a liberty

interest in sentence credits. *See Wolff*, 418 U.S. at 557; *Lennear*, 937 F.3d at 262. As several cases make clear, that right is patently infringed by detaining someone when those credits mandate release. *See, e.g.*, *Douthit*, 619 F.2d at 535–37 (rejecting qualified immunity defense where jailer detained plaintiff beyond release date as determined by good time credits); *Hurd*, 984 F.3d at 1088-89; *Swart*, 2024 WL 466797 at *9. No court of appeals has found to the contrary. While *Hurd* concluded that when it was decided, there was no clearly established right to release based on mandatory sentence credits, *Hurd* recognized such a right three years ago, *before* Virginia's amended sentence credit scheme went into effect. *See* 984 F.3d at 1088-89, 1092.

Moreover, while Defendants were detaining the class members, they were litigating the extent to which the § 53.1-202.3(A) amendments required release of *other* incarcerated people whose sentences were governed by *other* provisions of the statute in *Prease* and *Vasquez*. It defies belief that Defendants did not have fair warning that it would deprive people of their rights to detain them when the ESC statute explicitly required their release.

> 2. *It was clearly established that the class members were entitled to have their release dates determined by the amended earned sentence credit program.*

The statutory text clearly established the class members' right to participate in the ESC program. As the Virginia Supreme Court explained, "[b]y its plain language, Code § 53.1-202.3 establishes that all inmates are eligible for expanded earned sentence credits unless they were convicted of an offense that is enumerated under subsection A." *Prease*, 888 S.E.2d at 762. Inchoate offenses associated with robbery and carjacking are not enumerated in subsection A, either explicitly or by the potential catchall "any violation of" language.

Defendants have never identified any ambiguity in the provision concerning Mr. Puryear and the class members. *See* section I.A.3, *supra*. To the extent there is any dispute about whether it was clearly established *to Defendants* that Mr. Puryear and the class members were entitled to

expanded credits under the statute, that fact-intensive question is inappropriate for disposition on a motion to dismiss. *See, e.g.*, *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015) ("[I]t is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity."); *see also McKenna v. Wright*, 386 F.3d 432, 434 (2d Cir. 2004) (a qualified immunity defense "faces a formidable hurdle" when advanced in a Rule 12(b)(6) motion); *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004) (district could should not grant a Rule 12(b)(6) motion on qualified immunity grounds "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim").

## II.    The complaint states a claim for a violation of class members' procedural due process rights, and Defendants are not entitled to qualified immunity.

To prevail on a procedural due process claim, a plaintiff must show "(1) a cognizable liberty or property interest; (2) the deprivation of that interest by some form of state action; and (3) that the procedures employed were constitutionally inadequate." *Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 314 (4th Cir. 2012) (citation omitted). Both the class members' liberty interest in the earned sentence credits to which they were entitled under the amended statute and Defendants' deprivation of those credits are described above.

The constitutional inadequacy of the procedure here is clear: the class members received no pre-deprivation process at all. *See* Dkt. 1 ¶¶ 47–48, 61. The "analysis as to liberty parallels the accepted due process analysis as to property. The Court has consistently held that some kind of hearing is required at some time before a person is finally deprived of his property interests." *Wolff*, 418 U.S. at 557–58. Here, Mr. Puryear and the class members received *no process at all* before Defendants deprived them of the credits to which they were entitled. The failure to afford *any* process is a flagrant violation of *Wolff*, with the consequence that *Wolff* anticipates—the purpose of pre-deprivation process due is "to insure that the state-created right is not arbitrarily abrogated,"

14

*id.* at 557, and that is exactly what happened here.

Defendants maintain that the class members have failed to adequately allege what procedures were due, but that is incorrect. Mr. Puryear on behalf of the class members avers that they "were not given adequate notice" of the reasons for the denial, Dkt. 1 ¶ 93, "were not given an opportunity to rebut and confront VADOC's evidence and present their own," *id.* ¶ 94, "were not given an opportunity to appeal" the decision, *id.* ¶ 95, and were denied any adversarial hearing at all. *Id.* No more is required. *See West*, 2022 WL 125936, at *6 ("The Court does not need to determine what exact process the County should have engaged in here because the record reflects that no process was provided at all, and the County does not claim otherwise.").

Defendants next argue that Mr. Puryear has not identified any "relevant, disputed facts that a hearing could have established," Dkt. 18 at 16, and that resolving factual disputes is the only purpose of pre-deprivation process before denying earned sentence credits. *Codd v. Velger*, 429 U.S. 624 (1977), suggests the opposite. *Codd* made clear in the parole revocation context that "[w]here the liberty interest involved is that of conditional freedom following parole, . . . the hearing required by the Due Process Clause in order to revoke parole must address two separate considerations"—first, any factual dispute about a violation, and next, "whether if [the parolee] did commit the act his parole should, under all the circumstances, therefore be revoked." 429 U.S. at 627. Because of the urgency of the liberty interest at stake, "[t]he fact that there was no dispute with respect to the commission of the act would not necessarily obviate the need for a hearing on the issue of whether the commission of the act warranted the revocation of parole." *Id.* Here, the need for pre-deprivation process to prevent an arbitrary result, even in the absence of a dispute of fact, is evident from the circumstances following Mr. Puryear's habeas corpus petition. When Mr. Puryear availed himself of the only process he could by filing a habeas petition, Defendants

reversed course and released him and the other class members. *See* Dkt. 1 ¶¶ 64–68.

Defendants are also not entitled to qualified immunity on the procedural due process claim. As described in section I.A.1, *supra*, the good time credit liberty interest is well established, and *Wolff* made clear 50 years ago that it may not be abridged without pre-deprivation process. The class members' entitlement to release when their credits mandated it was also clearly established, as described in part I.B, *supra*.

### III.    The complaint states a claim for a violation of class members' Eighth Amendment rights, and Defendants are not entitled to qualified immunity.

An Eighth Amendment claim has both objective and subjective elements. To satisfy the objective component, the alleged deprivation must have been "sufficiently serious." *Campbell v. Florian*, 972 F.3d 385, 393 (4th Cir. 2020). To satisfy the subjective component, the plaintiff must allege that the defendant was "deliberately indifferent to his plight"—that is, the defendant "must have both subjectively recognized a risk of substantial harm and subjectively recognized that his actions were inappropriate in light of that risk." *Florian*, 972 F.3d at 395 (cleaned up).

A.    Detention beyond one's lawful sentence violates the Eighth Amendment.

"Next to bodily security, freedom of choice and movement has the highest place in the spectrum of values recognized by our Constitution," *Sample v. Diecks*, 885 F.2d 1099, 1109 (3d Cir. 1989), and so there is "no doubt that imprisonment beyond one's term constitutes punishment within the meaning of the eighth amendment," *id.* at 1108. *See also, e.g.*, *Hurd*, 984 F.3d at 1085 ("[U]nauthorized detention of just one day past an inmate's mandatory release date qualifies as a harm of constitutional magnitude under the first prong of the Eighth Amendment analysis."). Class members' detention after they were entitled to release clearly meets this standard.

Defendants contend that the Fourteenth Amendment, rather than the Eighth, is the proper vehicle for the class members' over-detention claim. *See* Dkt. 18 at 19–20. This argument is

incompatible with black letter law. The Fourth Circuit has stated that "[i]ncarceration beyond the termination of one's sentence may state a claim under the due process clause and the eighth amendment." *Golson*, 914 F.2d at 1491. More recently, in *Florian*, the court collected cases that have analyzed over-detention claims under both amendments, 972 F.3d at 394 & n.7, and analyzed such a claim under the Eighth. *Id. See also Swart*, 2024 WL 466797, at *7 ("[G]iven that the Fourth Circuit recently fully considered whether excess detention violated the Eighth Amendment . . . this Court too considers whether Plaintiffs make a valid claim under the Eighth Amendment."); *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985) (assessing over-detention claim under Eighth Amendment).[7] Ultimately, as noted above, courts have recognized that over-detention can violate both the Fourteenth Amendment right to liberty and the Eighth Amendment right to be free from cruel and unusual punishment.

The other two cases cited by Defendants are entirely inapposite. *McNeil v. Director*, 407 U.S. 245 (1972), concerned involuntary confinement in a hospital, not a prison. As no one argued that the hospital was "punishment," the Eighth Amendment was not at issue. And *Prieto v. Clarke*, 780 F.3d 245 (4th Cir. 2015), concerned the conditions—not the fact or duration—of confinement.

Defendants further contend that class members were not "punished" within the meaning of the Eighth Amendment because "any sentence-reducing credits are applied at the discretion of" VDOC and thus class members were not "held past [their] maximum allowable release date[s]." Dkt. 18 at 21. That is a mischaracterization of both Virginia law and the class members' claims. As described above, the "maximum allowable release date," *id.* at 22, is the date compelled by law, through both the original sentence and any reduction from mandatory sentence credits. *See*

---

[7] Defendants point out that the Fifth Circuit in *Jones v. City of Jackson*, 203 F.3d 875 (5th Cir. 2000), used the Fourteenth Amendment to analyze over-detention, but they fail to mention that *Golson*, *Sample*, and *Haygood* used the Eighth.

section I.A.1, *supra*. Since VDOC had no lawful discretion to deny ESCs to and detain class members as long as they did, class members were imprisoned past their release dates in violation of the Eighth Amendment. *See* Section III.A. The two cases cited by Defendants on this point, *see* Dkt. 18 at 22, both rely on discretion VDOC had under the pre-2022 version of Virginia's ESC scheme, which it no longer has, *see* section I.A.1, *supra*.

   B.   Mr. Puryear and the class members have sufficiently alleged that Defendants acted
        with deliberate indifference.

   As described in section I.A.3, *supra*, the class members have plausibly alleged that Defendants knew both about the risk of harm and that their actions were inappropriate in light of that risk.

   Defendants entirely mischaracterize the class members' contentions on this point. The class members do not allege that Defendants were deliberately indifferent for "fail[ing] to request an official opinion interpreting certain provisions of [the sentence credit] statute. Dkt. 18 at 23. Defendants were not obligated to seek an opinion about the meaning of clear statutory terms; they *were* obligated to comply with those terms. The fact that Defendants did not seek an opinion about the meaning of the provisions governing class members, although they twice sought Attorney General opinions regarding perceived ambiguities in the statute, is evidence that they subjectively recognized the clear statutory command but chose not to obey it.[8]

   Nor do the class members contend that Defendants' deliberate indifference stems from their "fail[ure] [to] immediately recognize that the reasoning in *Prease* should likely be applied beyond the limited circumstances presented by that case," Dkt. 18 at 24. Class members do not

---

[8] For this reason, Defendants' citations to *Campbell* and *Swart* similarly miss the mark. Those cases involved government attorneys' thorough but ultimately incorrect interpretations of allegedly ambiguous law. The instant case involves enforcement actors' failure to follow unambiguous law.

contend that *Prease* entitled them to credits, or that Defendants' misreading of *Prease* resulted in their injury. Rather, while *Prease* "affirmed that, unless explicitly enumerated in the text of the statute, *all* offenses are eligible for expanded ESCs," class members allege that the plain text of the statute entitled class members to credits more than a year before *Prease*. Dkt. 1 ¶¶ 38, 44.

C.   <u>Defendants are not entitled to immunity for the Eighth Amendment claim.</u>

It has long been clearly established that "[d]etention beyond the termination of a sentence" can violate the Eighth Amendment. *Haygood*, 769 F.2d at 1354; *see also Sample*, 885 F.2d at 1108 ("continued incarceration beyond the term established by the state" violates the Eighth Amendment); *Hurd*, 984 F.3d at 1092 ("[A]n inmate suffers a constitutional harm under the Eighth Amendment when they are detained beyond a statutorily mandated release date, even if that mandatory release date precedes the expiration of the maximum term of their sentence."). As explained in section I.A.1, *supra*, the class members' sentences consist of their original release dates as modified by mandatory credits to which they were entitled. As such, Defendants are not entitled to qualified immunity on this claim.

**IV.   <u>The complaint states a timely claim of false imprisonment.</u>**

Virginia defines false imprisonment as "the restraint of one's liberty without any sufficient legal excuse," *Montgomery Ward & Co. v. Wickline*, 50 S.E.2d 387, 388 (Va. 1948), which may arise from "the unlawful detention of a prisoner who has been lawfully arrested." *Spiers v. Sydnor*, 3 F. App'x 176, 179 (4th Cir. 2021) (unpublished) (citation omitted). VDOC falsely imprisoned the class members by continuing to imprison them after its legal authority to do so had expired.

Defendants argue that the false imprisonment claim is time-barred by Virginia Code § 8.01-243.2. Dkt. 18 at 27–28. That provision imposes a one-year statute of limitations on "personal action[s] relating to the conditions of his confinement." Va. Code Ann. § 8.01-243.2 (West 2024).

But the class members do not challenge the "conditions" of their confinement; they challenge the *fact* of their confinement. Both the Supreme Court and the Fourth Circuit have distinguished between "suits challenging the conditions of confinement" and those challenging "the fact or length of custody." *Wolff*, 418 U.S. at 554. *See also Todd v. Baskerville*, 712 F.2d 70, 72 (4th Cir. 1983). Defendants do not identify a single case that has applied § 8.01-243.2's statute of limitations to an over-detention claim.

Defendants next contend that the class members were not falsely imprisoned because they were not held longer than their original sentences. Dkt. 18 at 28–29. As described above, this misses the point: when the operation of class members' mandatory credits required their release, VDOC no longer had lawful authority to detain class members. *See* section I.A.1, *supra*. Just as an arrest that was initially lawful can become unlawful, *see Spiers*, 3 F. App'x at 179, class members' detention became unlawful as soon as their credits required release. *See McPhearson v. Anderson*, 873 F. Supp. 2d 753, 759 (E.D. Va. 2012) (quoting *Kress and Co. v. Roberts*, 129 S.E. 244 (Va. 1925)) (false imprisonment is both "the illegal detention of [a] person without lawful process," and "the unlawful execution of lawful process."). VDOC falsely imprisoned class members for weeks or months after they were legally entitled to release.

\*      \*      \*

For the reasons stated herein, Mr. Puryear, on behalf of himself and others similarly situated, respectfully requests that the Court deny Defendants' motion to dismiss.

Dated: August 20, 2024                    Respectfully submitted,

                                          _/s/ Michael Allen_
                                          Michael Allen (Va Bar. No. 25141)
                                          Rebecca Livengood*
                                          Ellora Thadaney Israni*
                                          David DePriest*
                                          Relman Colfax, PLLC
                                          1225 19th St. NW, Suite 600
                                          Washington, D.C. 20036
                                          Tel: 202-728-1888
                                          Fax: 202-728-0848
                                          mallen@relmanlaw.com
                                          rlivengood@relmanlaw.com
                                          eisrani@relmanlaw.com
                                          ddepriest@relmanlaw.com

                                          * admitted _pro hac vice_

                                          _Attorneys for Plaintiff_

## CERTIFICATION OF SERVICE

I hereby certify that a true copy of Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss was filed and served on Defendants on August 20, 2024 through the Court's electronic filing system.

<u>/s/ Michael Allen</u>
Michael Allen
*Attorney for Plaintiff*