IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

LESLIE PURYEAR,

    Plaintiff,

v.    CASE NO. 3:24-cv-479

CHADWICK DOTSON and
HAROLD CLARKE,

    Defendants.

## REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

When a criminal defendant is first sentenced and brought into the custody of the Virginia Department of Corrections, that inmate is required to serve the entire active sentence of incarceration imposed by the trial court. Code § 53.1-186. When calculating how long that inmate should remain in custody, VDOC must reduce the total active sentence of incarceration by awarding credit for time spent awaiting trial. Code § 53.1-187. VDOC has no discretion under those circumstances; so-called "jail credit" must be awarded. *See id.*

But after credit for time spent awaiting trial is deducted from the total active term of incarceration, an inmate's actual release date on the remaining active sentence is a moving target. An inmate might earn sentence-reducing credit under one of the established statutory schemes, or he might not. Or an inmate might earn sentence-reducing credit, only to have that credit later taken away for violating a prison rule or attempting to escape. Code § 53.1-189. A conditional release date, then, is just that: conditional. And that estimated release date will change over time if the rate at which an inmate is earning sentence-reducing credits increases or decreases.

Calculation of a conditional release date, then, always carries with it some degree of speculation and uncertainty. It could end up being earlier than thought, or later. And it is in that inherently gray area—applying sentence-reducing credit to determine a conditional release date—that this case falls. This is not, then, a circumstance where an inmate received a determinate active sentence, and then remained in custody past the expiration of that term.

Because no precedent from the Fourth Circuit or the United States Supreme Court has clearly established that correctional officials violate the federal constitution when—attempting to apply state law—they miscalculate a conditional, good-time release date,[1] Defendants are entitled to qualified immunity as to the claims under 42 U.S.C. § 1983.[2] For this reason, and as discussed in more detail below, this Court should grant Defendants' motion to dismiss.

A. *Because the Earned Sentence Credit program is administered in the discretion of VDOC, inmates do not have a vested liberty interest in earning any sentence-reducing credit, much less the maximum rate of sentence-reducing credit.*

Code § 53.1-202.2 provides that an inmate convicted of a felony offense committed on or after January 1, 1995, "shall be eligible to earn sentence credits in the manner prescribed by this article." Code § 53.1-202(A). But being "eligible" to participate in the earned sentence credit program is not the same as having a vested, mandatory interest in actually having those credits awarded. That would be akin to reasoning that every inmate "eligible" for parole has a vested liberty interest in being *released* on parole, a proposition that has been soundly rejected by every court to have considered it. *See, e.g.*, *Burnette v. Fahey*, 687 F.3d 171, 181 (4th Cir. 2012).

---

[1] *Cf. Torrence v. Lewis*, 60 F.4th 209, 213-14 (4th Cir. 2023) (when a habeas petitioner's "claim rests solely upon an interpretation of state case law and statutes, it is not cognizable on federal habeas review," for habeas relief may only be granted when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States").

[2] Although selectively rebutting certain arguments raised in the Plaintiff's brief in opposition, Defendants do not waive any of the arguments raised in their initial memorandum in support.

Under the ESC program, inmates may be assigned to one of four classification levels, Level I being the highest (15 days earned for every 30 days served), and Level IV being the lowest (0 days earned for every 30 days served). Code § 53.1-202.3(B). Although the Code identifies certain eligibility considerations for each Level, those considerations are inherently subjective and rely on VDOC policy. *Compare, e.g.*, Code § 53.1-202.3(B)(2) (assignment to Level II for inmates "who require improvement in not more than one area as established by the Department's policies or procedures"); Code § 53.1-202.3(B)(3) (assignment to Level III for inmates "who require significant improvement in two or more areas as established by the Department's policies or procedures"); Code § 53.1-202.3(B)(4) (assignment to Level IV for inmates who "willfully fail[] to participate in or cooperate with all programs," or who "cause[] substantial security or operational problems at the facility as established by the Department's policies or procedures").

Moreover, Virginia law expressly provides that the VDOC Director should "[e]stablish the criteria upon which a person shall be deemed to have earned sentence credits," "[e]stablish the bases upon which earned sentence credits may be forfeited," "[e]stablish the number of earned sentence credits which will be forfeited for violations of various (i) institutional rules, (ii) program participation requirements or (iii) other requirements for the retention of sentence credits," and "[e]stablish such additional requirements for the earning of sentence credits as may be deemed advisable and as are consistent with the purposes of this article." Code § 53.1-202.4. Considering this statutory enactment as a whole, the VDOC Director plainly retains discretion to establish rules and procedures governing assignment to each of the ESC earning levels, and under which an inmate may earn the maximum amount of sentence-reducing credit, or none at all.

Defendants maintain, therefore, that an award of sentence-reducing credit remains vested in the discretion of VDOC, and inmates do not possess a protected liberty interest in earning sentence-reducing credits, or in assignment to a specific earning level.[3]  Because a protected liberty interest is a threshold requirement for Plaintiff's substantive and procedural due process claims, both fail at the outset.

B.    *The appropriate standard for a substantive due process claim requires conduct that shocks the conscience, and that standard is not met here.*

The appropriate standard to apply in a substantive due process context is not, as urged by Plaintiff, always or even often a question of simple deliberate indifference, but rather, that of conscience-shocking misconduct.  (Plf's Br. at 10)  *County of Sacramento v. Lewis*, 423 U.S. 833 (1998), the case cited by Plaintiff, does not supplant the concept that only the most egregious and arbitrary governmental misconduct will rise to the level of a substantive due process violation, but rather, reaffirms it.

In *Lewis*, a 16 year old boy was killed following a high-speed police pursuit, and his parents filed an action under 42 U.S.C. § 1983, alleging a substantive due process violation predicated on the loss of life.  The Supreme Court reversed the Ninth Circuit's holding that deliberate indifference was the appropriate standard to apply under the circumstances, noting instead that

> Our cases dealing with abusive executive action have repeatedly emphasized that only the most egregious official conduct can be said to be arbitrary in the constitutional sense, thereby recognizing the point made in different circumstances by Chief Justice Marhsall, "that it *is a constitution* we are expounding." . . . [T]he Due Process Clause was intended to prevent government officials from abusing [their] power, or employing it as an instrument of oppression.  To this end, for half a century now we have spoken of

---

[3] This is, of course, in contrast to sentence-reducing credits that have already been awarded, in which the Supreme Court has recognized a vested liberty interest.  *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974).

4

>>the cognizable level of executive abuse of power as that which shocks the conscience.

*Lewis*, 423 U.S. at 846-47 (citations and quotations omitted). Although recognizing that certain forms of indifference may rise to the level of conscience-shocking misconduct, *Lewis* did not hold that deliberate indifference will always suffice: "Deliberate indifference that shocks in one environment may not be so patently egregious in another, and our concern with preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience-shocking." *Id.* at 850.

This complaint does not sufficiently allege that either defendant, himself, engaged in deliberate misconduct so egregious and arbitrary as to shock the conscience. Although alleging that "VADOC" failed to seek clarification of the amended statute, "VADOC" continued to detain inmates who otherwise should have been awarded additional sentence-reducing credit, and "VADOC" engaged in other forms of alleged misconduct, the complaint does not specify what deliberate, conscience-shocking misconduct former Director Clarke engaged in, himself, so as to make him liable under the Fourteenth Amendment. Rather, the only allegations specific to Defendant Clarke are that he sought an advisory opinion about certain parts of the amended statute, but not others, Compl. ¶¶ 40-42, and that he was generally responsible for administering the ESC program, Compl. ¶ 46. Nor does the complaint specify what deliberate, conscience-shocking misconduct Director Dotson engaged in, himself, so as to make him liable under the Fourteenth Amendment. Generalized allegations targeted to the agency as a whole fall far short of the pleading standard needed to establish an individualized substantive due process claim— plausibly alleging deliberate official misconduct, specific to the named defendant, so egregious as to shock the conscience. Misinterpreting a state statute does not meet that threshold.

C.  *At best, notification of the ineligibility determination is the only procedural due process requirement in this context.*

The federal Due Process Clause is not automatically implicated—much less violated—whenever a state official misinterprets or misapplies a state law. A determination that an individual is ineligible to receive a sentence-related benefit conferred by a state statute—where eligibility is a question purely of state law—requires minimal due process protections under the federal constitution, if any. Because Plaintiff concedes he received notice that he was not being deemed eligible to receive the additional sentence-reducing credits, those minimal requirements have been met here.

The Fourth Circuit's recent decision in *Torrence v. Lewis*, 60 F.4th 209 (4th Cir. 2023), is instructive on this point. In *Torrence*, the inmate was deemed ineligible to be considered for release on discretionary parole under a state statute. He filed a petition for a writ of habeas corpus, contending that the state's failure to provide him with appropriate procedural protections in the context of his ineligibility determination violated procedural due process. *Id.* at 213. The Fourth Circuit rejected this argument, noting that "we cannot consider [as a federal constitutional question] whether a State's parole-eligibility decision was made properly in accordance with state law," but rather, "we are left to review only whether the procedures afforded the petitioner accorded with his federal due process rights." *Id.* at 216. Because the inmate had received a letter notifying him that he was ineligible for parole, the Fourth Circuit concluded that he had "received the limited process required" under those circumstances. *Id.* at 217.

Here, the complaint alleges that "VADOC sent a form letter to each [] individual [convicted of an inchoate offense] informing them they would not receive the [additional sentence-reducing credit]." Compl. ¶ 47. There is no question, then, that Plaintiff received notice that he was being deemed ineligible to receive additional credits under Code § 53.1-202.3,

6

as amended. Even if Plaintiff had some liberty interest under the amended statute, this notification provided sufficient procedural protections under analogous Fourth Circuit precedent. *See id.*; *see also Vann v. Angelone*, 73 F.3d 519, 523 (4th Cir. 1996) (letter to inmate informing him of his ineligibility for parole "sufficed to communicate to [the inmate] that it was his prior criminal activity that precluded his present eligibility for parole" and therefore comported with procedural due process). Plaintiff's procedural due process claim therefore fails.

D.      *The False Imprisonment Claim Is Time-Barred.*

Plaintiff contends that the one-year statute of limitations in Code § 8.01-243.2 does not apply to his state-law claim, for although it involves an inmate challenging his confinement, Plaintiff contends that it is a challenge to the "fact or length of custody" rather than his "conditions of confinement." (Plf's Br. at 20). Plaintiff utterly neglects, however, to identify an alternative statute of limitations that he alleges should govern his state-law intentional tort claim instead.

Regardless, Code § 8.01-243.2 broadly applies to all civil claims that "relate" to the inmate's confinement, not simply those that directly challenge the physical conditions of incarceration. *See generally Marlowe v. S.W. Va. Reg'l Jail Auth.*, ___ Va. App. ___, 2024 Va. App. LEXIS 439, at *18 (Ct. App. July 30, 2024) (claims "regarding the manner in which [the inmate] was restrained and transported" sufficiently "relate[d] to the conditions of his confinement"). As the Western District has held in an analogous situation, a "state law false imprisonment claim arises entirely out of the conditions of his confinement, namely its improper duration." *Coleman v. Clear*, No. 1:23cv00022, 2024 U.S. Dist. LEXIS 64648, at *9 (W.D. Va. Apr. 9, 2024) (dismissing state-law claim for false imprisonment as untimely under Code § 8.01-

243.2). Accordingly, Plaintiff's false imprisonment claim falls within the scope of Code § 8.01-243.2, and it is time-barred.

## CONCLUSION

For the foregoing reasons, and those articulated in Defendants' initial supporting memorandum, Defendants respectfully request that this Court GRANT their Rule 12(b)(6) motion and dismiss the claims against them.

Respectfully submitted,

CHADWICK DOTSON and HAROLD W. CLARKE, Defendants.

By:        /s/
Margaret Hoehl O'Shea, SAAG, VSB #66611
Attorney for named Defendants
Criminal Justice & Public Safety Division
Office of the Attorney General
202 North 9th Street
Richmond, Virginia 23219
(804) 225-2206
(804) 786-4239 (Fax)
Email: moshea@oag.state.va.us

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 26th day of August, 2024, I electronically filed the foregoing Reply with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the all filing users; and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participant: N/A

By:        /s/
Margaret Hoehl O'Shea, SAAG, VSB #66611
Attorney for named Defendants
Criminal Justice & Public Safety Division
Office of the Attorney General
202 North 9th Street
Richmond, Virginia 23219
(804) 225-2206
(804) 786-4239 (Fax)
Email: moshea@oag.state.va.us