# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

LESLIE PURYEAR, *on behalf of himself and all those similarly situated*,

Plaintiff,

v.

CHADWICK DOTSON, *in his individual capacity*,

HAROLD CLARKE, *in his individual capacity*,

Defendants.

Civil Action No. 3:24-cv-00479-REP

**DECLARATION OF REBECCA LIVENGOOD**

I, Rebecca Livengood, hereby declare and state the following:

1. I am over the age of eighteen and am competent to make this Declaration. I have personal knowledge of the matters set forth herein.

2. I am counsel for Plaintiff in the above-captioned case.

3. I submit this Declaration in support of Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement, Certification of Settlement Class, Approval of Attorney Fee Award, and Approval of Service Award ("Final Approval Motion").

4. I am a Partner at the law firm Relman Colfax, PLLC. Relman Colfax specializes in representing plaintiffs in civil rights litigation across the country. Relman Colfax routinely litigates a wide range of discrimination cases in federal court.

5. Relman Colfax attorneys have experience serving as class counsel for multiple certified class actions, such as *Carroll et al. v. Walden University LLC et al.*, No. 1:22-cv-00051 (D. Md. 2022) (reverse redlining on the basis of race and gender); *Fair Hous. Ctr. Of Cent. Indiana, Inc. v. Rainbow Realty Grp., Inc.*, No. 1:17-CV-1782, 2020 WL 1493021 (S.D. Ind.

Mar. 27, 2020) (predatory rent-to-buy program targeted on the basis of race and ethnicity); *Flack v. Wis. Dep't of Health Servs.*, 18-cv-209 (W.D. Wis. 2019) (denial of Medicaid coverage for treatments related to gender transition); and *Moore v. Duke*, Civ. No. 00-953 (D.D.C. 2000) (discrimination by U.S. Secret Service). In each of these cases, the court found Relman Colfax qualified to serve as class counsel.

6. Relman Colfax attorneys, including myself, also have experience litigating against government actors in cases such as *Goodwin et al. v. District of Columbia et al.*, No. 1:21-cv-00806 (D.D.C.) (multi-plaintiff action asserting § 1983 and related claims against police officers and department); *Banks et al. v. City of Fredericksburg et al.*, No. 3:21-cv-00065 (E.D. Va.) (multi-plaintiff action asserting § 1983 and related claims against police officers and city); *Kovari v. Brevard Extraditions, LLC*, No. 5:18-cv-00070 (W.D. Va.) (§ 1983 and related claims against private prison companies and employees who assumed governmental role); *Hicks v. Ferreyra*, No. 8:16-cv-2521 (D. Md.) (§ 1983 and related claims against U.S. Park Police). In each of these cases, Relman Colfax served as lead counsel, handling all portions of the litigation, including drafting the complaint, motion practice, discovery, and settlement.

7. Relman Colfax began working with class representative Leslie Puryear Jr. in 2023, when the firm filed a petition for a writ of habeas corpus on his behalf. That petition was filed in September 2023, and Mr. Puryear (and other class members) were released from prison in November 2023. Mr. Puryear was the only person who came forward to bring this lawsuit. Although the case received ample publicity and Relman Colfax attorneys were available to speak to individuals who thought they might be class members, no other person who was a part of the class came forward at any time before the notice period.

8. After Mr. Puryear and the class members were released, Relman Colfax began to investigate the above-captioned matter, and since that time has acted as lead counsel for all aspects of the litigation.

9. I have had primary responsibility for the day-to-day litigation and management of the matter during the entire course of the firm's involvement. I have been involved in all aspects of this litigation, including the factual development of the case; developing the legal theory of the case; supervising the drafting of the complaint, motions briefing, and discovery; consulting with potential experts; interacting with opposing counsel; and leading mediation. Throughout the case, I attempted to assign the most junior person appropriate for a given task, including paralegals and summer associates where possible.

10. I graduated from Yale University in 2007 and received my law degree *cum laude* from Harvard Law School in 2012. Following law school, I served as a law clerk to the Honorable Stewart Dalzell in the U.S. District Court for the Eastern District of Pennsylvania and to the Honorable Michael A. Chagares on the federal Third Circuit Court of Appeals. I have been with Relman Colfax since 2019, where I have litigated a wide variety of civil rights cases, including others involving the rights of incarcerated persons. Prior to joining Relman Colfax, I litigated civil rights cases at the American Civil Liberties Union of New Jersey and the Equal Rights Initiative in Montgomery, Alabama, including many cases about the rights of incarcerated people. I am admitted to practice in the District of Columbia, New Jersey, and New York.

11. In addition to myself, Ellora Israni, an Attorney at Relman Colfax, assumed a substantial role in litigating this matter. Ms. Israni graduated from Stanford University in 2014 and received her law degree *cum laude* from Harvard Law School in 2019. Following law school, she clerked for Judge Richard Seeborg on the U.S. District Court for the Northern

District of California. Prior to joining Relman Colfax in 2024, she litigated civil rights cases, including several cases about the rights of incarcerated people, at Civil Rights Corps in Washington, D.C. Ms. Israni is admitted to practice law in the District of Columbia and California. She has been actively involved throughout the course of this litigation, including investigation, preparing the complaint, motions briefing, discovery, interacting with opposing counsel, and negotiating the settlement.

12. Emahunn Campbell, a civil rights fellow, has also assisted with this matter. Mr. Campbell graduated from the University of Virginia in 2008 and received his law degree from Rutgers Law School, Newark, in 2021. Mr. Campbell also earned his PhD in Afro-American Studies from the University of Massachusetts, Amherst, in 2015. He is admitted to practice in New Mexico.

13. The attorneys on this case have been assisted by paralegal Jazmin Trenco, summer associate Cole Lautermilch, and litigation support specialist Jonathan Iyob.

14. Relman Colfax worked closely with Mr. Puryear throughout the litigation process. We spoke to Mr. Puryear on several legal calls while he was incarcerated, visited him in prison, and have had numerous phone and in-person conversations during the pendency of this case in order to investigate and draft the complaint, respond to written discovery requests, collect documents, and prepare for mediation. Mr. Puryear personally attended both days of mediation in this matter. Mr. Puryear has often received questions from individuals inquiring about whether they are class members and has passed them along to me. In these instances, I have investigated and responded accordingly. Based on my review of our attorney and staff emails, text messages, and contemporaneous time records, I believe that Mr. Puryear has spent at least 30 hours on this matter. Our team has also reviewed approximately 7,600 very personal emails exchanged

between Mr. Puryear and his loved ones while he was incarcerated and found that 197 of those concerned him seeking legal representation, tracking the status of the bill that ultimately became the earned sentence credits law in Virginia (Va. Code Ann. § 53.1-202.3), asking his family to seek updates regarding his release date, and communicating with our office. Approximately 112 of these emails were focused on his effort to obtain legal counsel for his habeas petition.

15. After the Court preliminarily approved the proposed settlement, the Parties retained Settlement Services, Inc. ("SSI") to administer notice to class members and other aspects of the settlement. Relman Colfax worked closely with SSI to assure that notice was distributed in accordance with the Court's orders granting preliminary approval. A declaration from Aisha Lange of SSI describing SSI's administration of notice is being submitted to the Court concurrently with this declaration.

16. On January 20, 2025, Defense Counsel provided Relman Colfax and SSI with a spreadsheet including the name, address, phone number, probation officer (where applicable), custody status, and length of over-detention/projected class payment, as agreed to by the Parties.

17. There were 52 names on this list; while VDOC's records originally indicated that there were 53 potential class members, Dkt. 55-1 at 30-34, one of those individuals reached a separate agreement with VDOC releasing his claims regarding over-detention before the Parties sought preliminary approval of this settlement. Of the 52 class members, Defendants provided mailing addresses for 51 class members and noted that six class members were presently in the custody of a prison or jail—one in prison and five in local jails.

18. The one class member who did not have an address, Jorge Jovel, was specifically identified in the Settlement Agreement. Mr. Jovel was deported shortly after he was released from VDOC custody and is no longer living in the United States. Relman Colfax conducted an

investigation in order to determine the location of this class member, including extensive searching for family members in the United States and Guatemala and a hand-delivery of his notice to an uncle in the United States. Relman Colfax was ultimately able to reach Mr. Jovel by email April 19, 2025, and by phone on April 21, 2025. Relman Colfax sent him his Notice via email on April 19, 2025. Relman Colfax has obtained the information necessary to facilitate an international payment to this class member and shared it with SSI.

19. For the six class members who were back in custody, Relman Colfax called the prison/jail where each class member was housed and verified the legal mail address. For the five people in jails, SSI had received their last-known residential addresses and planned to send the Notices there; Relman Colfax asked SSI to also mail duplicate copies to each class member at their in-custody address and provided those addresses. Two class members in custody were not able to receive these Notices via legal mail—Rashaad Jones and Jedediah Gauzza. For Mr. Jones, the Parties and SSI learned that he had not received the Notice because the prison where he is incarcerated reached out to SSI to ask them to re-send the notice under a "Legal Mail" stamp. It is my understanding that SSI did so. In addition, VDOC facilitated hand-delivery of the Notice to Mr. Jones, and Relman Colfax spoke with him on March 28, 2025, and he confirmed that he had received it.

20. For Mr. Gauzza, his fiancée received the Notice and spoke to him, and he informed the Parties and SSI that he had not received a copy of the Notice, but he wished to dispute the number of days as calculated in the Notice for him that his fiancée received. Mr. Gauzza raised this dispute through a letter sent to Plaintiff's counsel on March 5, 2025. Upon receiving the letter, our office immediately sent a copy to SSI and defense counsel. Defense counsel confirmed that the calculation of days was correct the following week, and the

Parties approved a challenge denial letter to be sent to Mr. Gauzza. SSI informed us that it mailed this denial letter on March 12, 2025. SSI informed us that it then received another letter contesting the calculation of days from Mr. Gauzza with a different return address, the Loudoun County Adult Detention Center. On March 18, 2025, SSI informed us that it sent another copy of the challenge denial letter to Mr. Gauzza at this new address. To ensure its arrival ahead of the deadline to object, Ms. Israni hand-delivered the letter and a copy of the Notice on April 4, 2025.

21. In order to minimize the costs of administering this settlement, and thereby maximize recovery to the class, Relman Colfax has taken on much of the work of administering the settlement. In addition to the outreach and delivery of Notices described above, for George Kebe, a class member whose Notice was returned, who was not incarcerated, and for whom SSI could not find an alternate address, Relman Colfax investigated by contacting the probation officer listed in defense counsel's spreadsheet, calling Mr. Kebe, and using online research tools. Relman Colfax was initially able to identify an alternate address for Mr. Kebe and gave that address to SSI, who sent him a Notice there. Immediately after, Relman Colfax learned that Mr. Kebe was in a residential facility in Washington, D.C., and Plaintiff's counsel visited him there and delivered the notice in-hand.

22. In total, as noted in the table below, Relman Colfax has spent 77.9 hours of attorney and staff time, or $40,297.50 in fees, ensuring that each class member receives notice.

23. Based on Relman Colfax's extensive communications with SSI and class members, my review of the Notice documents, and Ms. Lange's declaration, I believe notice was directed to class members in accordance with the notice process set forth in the Court's orders. I believe that every class member received notice through at least one form. A summary of the notice provided is here:

<table>
<tr><th colspan="7">51 class members in the United States</th></tr>
<tr><th colspan="4">6 incarcerated</th><th colspan="3">45 not incarcerated</th></tr>
<tr><td rowspan="3">1 at VDOC prison<br><br>Notice mailed to VDOC address; VDOC asked SSI to re-mail notice<br><br>SSI re-mailed & VDOC hand-delivered to class member<br><br>Plaintiff's counsel confirmed receipt by phone call</td><td colspan="3">5 at local jails<br><br>Duplicate notices mailed to home addresses and in-custody addresses</td><td rowspan="3">38 Notices mailed and not returned</td><td colspan="2">7 returned as undeliverable</td></tr>
<tr><td rowspan="2">1 class member learned about settlement but called to say he did not receive Notice at jail address<br><br>Plaintiff's Counsel hand-delivered Notice at jail</td><td colspan="2">2 Notices sent to home addresses returned as undeliverable<br><br>Notices sent to jail addresses presumed received</td><td rowspan="2">For 6 class members, SSI conducted tracing and found new addresses, sent Notices to new addresses, which were not returned</td><td rowspan="2">For 1 class member, Plaintiffs' Counsel found alternate address, to which SSI re-mailed Notice.<br><br>Plaintiffs' Counsel also hand-delivered copy of Notice, and class member sent email that was not returned as undeliverable</td></tr>
<tr><td>1 class member was sent Notice at alternate home address, not returned as undeliverable</td><td>1 class member received email Notice that was not returned as undeliverable</td></tr>
</table>

24. No class members opted out during the notice period. One class member filed an objection. *See* Dkt. 59.[1]

25. From the beginning of this matter, consistent with Relman Colfax's practice, all attorneys, fellows, summer associates, paralegals, and litigation support staff maintained contemporaneous time records, including a description of the tasks and activities they performed

[1] One additional class member sent a letter to SSI and Relman Colfax which Relman Colfax originally believed to be an objection. Because the objection included a history of the class member's commissary purchases, Ms. Trenco called the class member to tell him Relman Colfax would be filing the objection on the public docket pursuant to the Court's directive. The class member then informed Ms. Trenco that he did not wish to object. I then spoke to him directly by phone and he reiterated that he did not wish to object and asked that his letter not be filed with the Court.

for the matter. Those records and descriptions were entered into the electronic database that the firm maintains for this purpose.

26. In the course of preparing this declaration I have reviewed all of the daily time records maintained by all Relman Colfax attorneys, fellows, summer associates, paralegals, and litigation support staff regarding their work on this matter from its inception in 2023 through the end of April 2025.

27. The following table sets forth billing rates for Relman Colfax attorneys and staff along with the rates this Court approved as local rates in *Haney v. Genworth Life Ins. Co.*, 3:22-cv-55-REP, Dkt. 137 (opinion); Dkt. 43-9 (rates):

| **Title** | **Relman Colfax Rate** | **Approved Rate for Class Counsel in *Haney v. Genworth* in 2023** |
|---|---|---|
| Partner | $975 | $500-1100 |
| Attorney | $600 | $350-630 |
| Fellow | $500 | $350-630 |
| Paralegal | $300 | $100-375 |

28. The following table sets forth the total number of hours and attorneys' fees incurred for each stage of litigation:

| Case Phase | Attorneys' Fees | Hours |
|---|---|---|
| Investigation and Complaint Drafting | $84,010 | 134.3 |
| Motion to Dismiss | $65,090.00 | 82.70 |
| Discovery | $114,852.50 | 187.40 |
| Mediation and Negotiating Settlement Agreement | $111,347.50 | 178.90 |
| Motion for Preliminary Approval and Class Certification Motion and Hearing | $142,575.00 | 223.80 |
| Ensuring Notice to Class | $40,297.50 | 77.90 |
| Admin | $4,975.00 | 12.20 |
| Media | $5,947.50 | 6.60 |
| **Total** | **$569,095** | **903.80** |

29. In reviewing the time records, I exercised billing discretion and removed 216.8 hours, or $104,045 in fees, by removing time entries by non-core timekeepers, time spent bringing new attorneys or staff onto the case, hours spent by attorneys or paralegals attending hearings where they were not engaged in a stand-up role, time spent by attorneys on administrative work, and billing entries that were overly vague.

30. I believe that the amounts in the table reflect work that was necessary for the proper and successful development and litigation of this matter.

31. As reflected above, the total attorneys' fees and costs expended by Class Counsel in this matter are $569,095.

Under penalties of perjury, I declare that I have read the foregoing declaration and that the facts stated in it are true to the best of my knowledge and belief.

EXECUTED WITHIN THE UNITED STATES ON:

May 5, 2025

Rebecca Livengood